UNEMPLOYMENT COMPENSATION COMMISSION OF DELAWARE,

*vs.*

GEORGE W. MCCAULLEY & SON, INC., a corporation of the State of Delaware, CLARENCE W. MCCAULLEY INC., a corporation of the State of Delaware, and CLARENCE W. MCCAULLEY.

*New Castle, December 3, 1941.*

*Alexander Jamison,* for complainant.

*Edmund S. Hellings,* for respondent George W. McCaulley & Son, Inc.

*Ivan Culbertson,* for respondents Clarence W. McCaulley, Inc., and Clarence W. McCaulley.

THE VICE-CHANCELLOR: The questions are whether a transfer of assets of George W. McCaulley & Son, Inc., to Clarence W. McCaulley was fraudulent as to the creditors of the corporation; and, if so, whether the complainant may, as a creditor, enforce its claim against the transferee.

For some time prior to January 1, 1938, George W. McCaulley & Son, Inc., conducted a business in Wilmington, which, although not definitely described, appears to be that of a contractor for electrical equipment, plastering and tile. Clarence W. McCaulley was a director and officer of the

corporation, active in the conduct of its affairs, and the owner of 1,261 out of a total 1,389 shares of its issued capital stock. The holders of the remaining shares are shown on the books to be George W. McCaulley and Rose F. McCaulley. On December 31, 1937, the corporation ceased to carry on an active business. Thereafter, and until June 1, 1939, Clarence W. McCaulley, as sole proprietor, carried on the same business, in the same location as the old corporation. In the bill it is alleged that this business has been conducted since June 1, 1939 by another corporation, the respondent Clarence W. McCaulley, Inc., organized by McCaulley, and that some of the property which formerly belonged to the old corporation was transferred by McCaulley to the new company. This aspect of the case is not sustained by the proofs and hence only transactions between the old corporation and McCaulley will be considered.

Complainant asserts that the old corporation became liable to it, under the *Unemployment Compensation Law*, 41 *Laws of Delaware, Chap.* 258, *p.* 742, for "contributions," as defined in the act, for the year ending December 31, 1937, in the aggregate amount $690.07, of which only $172.91 was paid. Complainant asks to be paid the balance, $517.16, with interest at the rate of one-half per centum per month from November 30, 1937, on $345.52, and from January 31, 1938, on $171.64, the dates when the respective sums became payable. Complainant alleges, among other things, that the old corporation transferred to McCaulley, without consideration, its cash, accounts receivable, its interest and equity in unfinished contracts, and other property; that when the transfers were made the corporation was insolvent; that the effect was to hinder and delay the corporation's creditors and that, therefore, the transfers were fraudulent as to the creditors, including complainant; that McCaulley is personally liable to the creditors to the extent of the value of the property transferred.

Complainant called for the production at the hearing

of certain books and records of the respondents. They declined to produce, and complainant proceeded by secondary evidence to prove the contents of certain of the respondents' business records. An accountant in complainant's employ testified that he had made an audit of the books of the respondents in 1940. He testified as to what the books disclose, and an audit which he had prepared was introduced in evidence over the respondents' objection. Respondents contend that this testimony, as well as the audit, are discredited because the witness denied what appears to be highly probable; that he copied into his audit comments and other matters from a financial report previously prepared by an accountant retained by respondents. This report was introduced in evidence by respondents. The financial statements of the old corporation, with which we are here concerned, are the same in each report; in fact, the contents of its books are reflected almost identically in the two reports, and the facts thus appearing are uncontradicted by any other evidence. For this reason, and since it definitely appears that complainant's witness did in fact examine the books, I am not disposed to reject his testimony.

Although the evidence leaves unexplained many details, certain fundamental facts are clearly established. On November 4, 1937, by execution process under a judgment against the old corporation, a levy was made upon its physical property. McCaulley testified that this property included the entire inventory of the corporation, the machinery, automobiles and trucks, office furniture and equipment; that these items are those shown on a financial statement of the corporation dated December 31, 1937; that they were subsequently sold at public sale for the sum of $442, which was less than the amount of the judgment.

After the levy, the corporation assigned to Clarence W. McCaulley, without consideration, accounts receivable in the aggregate face amount of $12,036.84, and its interest and equity in unfinished contracts, the total amount of the

contracts being $9,173.60. This assignment was not recorded on the books of the corporation. It appears from the testimony of McCaulley as well as of the accountant that the accounts and unfinished contracts were actually taken over by McCaulley on January 1, 1938, when he began doing business as sole proprietor. His books show as an opening entry on that date an item, accounts receivable, in the amount of $16,427.48. The accountant testified that these were the accounts receivable of the old corporation, and also included, as I understood him, part of the unfinished contracts. Precisely in what amount or upon what basis the unfinished contracts were added as accounts receivable of the sole proprietorship is not clear; but McCaulley admitted an assignment to him of the accounts receivable and unfinished contracts and offered no evidence to contradict or to explain the amounts stated.

On January 1, 1938, McCaulley took over the corporation's cash in the amount of $539.09. He used its furniture, which was then subject to the levy, until it was sold at the execution sale, and then bought it back from purchasers at the sale.

On January 1, 1938, the only assets of the corporation not covered by the levy or assigned to McCaulley appear, in both audits introduced, under the caption "Other Assets" having a book value of $58,688.89. Of this sum, $37,977.78 represents notes of McCaulley stated to have been issued between December 31, 1925, and December 31, 1931, on which nothing had been paid. The remainder of the sum consists for the most part of accounts in which the last transactions were prior to December 31, 1934. When the transfers were made, the total indebtedness of the corporation appears from the books to have been $68,933.97, and thus exceeded the book value of the "Other Assets" mentioned above. The result would be the same if the item of liabilities appearing on the books as due to McCaulley, in the amount of $30,653.95, be subtracted from the "Notes

Receivable" due from him. The "Other Assets" would be thereby reduced to $28,034.94, as against indebtedness, other than to McCaulley, of $38,280.02. Assuming the "Other Assets" were fully collectible, the assignment to McCaulley rendered the corporation insolvent, unless the value of the property then covered by the levy was greater than the amount by which the indebtedness exceeded the "Other Assets."

It is true that the items of property subject to the levy were shown in the sheriff's inventory (as well as on the corporate books) as having values substantially in excess of what was ultimately realized from them at the sale, and indeed in excess of the judgment under which they were sold. But McCaulley testified that no appraisal was made at the time of the levy and that the values stated in the inventory were furnished by a former employee who, McCaulley's testimony seems to imply, was dishonest. In any event, the property was not, on January 1, 1938, free to be applied to the payment of corporate debts, and the corporation never realized anything from the actual proceeds of their sale. Accordingly, it is reasonable to treat the amount of such proceeds as the value of the property, for the purpose of determining the assets available for the payment of debts of the corporation at the time of the transfer without consideration to McCaulley. Assigning that value to the property subject to the levy, the result of the transfer to McCaulley was that the corporation was thereby deprived of sufficient property to pay its indebtedness in full. In consequence, the transfer was fraudulent as to creditors of the corporation, and the property transferred may be pursued, or the transferee held liable to creditors to the full extent of the value of such property. Compare *McKee v. Standard Minerals Corp.*, 18 *Del. Ch.* 97, 156 *A.* 193; *Berwick v. Associated Gas & Electric Co., et al.*, 20 *Del. Ch.* 265, 174 *A.* 122; 15A *Fletcher Cyclopedia of Corporations, Sec.* 7378.

However, McCaulley contends that he is relieved of any liability to the corporation's creditors. In his answer, he "admits that certain accounts receivable and interest and equity in certain unfinished contracts were transferred to the said Clarence W. McCaulley, but saith that the said accounts receivable and the interest and equity in the said contracts when collected were all expended in payment of the obligations of the said George W. McCaulley & Son, Inc." The answer of the old corporation contains identical language. But the record is wholly lacking in anything which approaches an accounting for the property admittedly taken over by McCaulley. He does not state the amount or value of the accounts receivable and equity and interest in unfinished contracts which he received. Nevertheless, his answer should be deemed to admit the allegations of the bill that the book values of these items were "more than $12,-000.00" and "more than $9,000.00," respectively. He offered no evidence of how much he collected, although it is reasonably inferable from his answer that he collected all of the accounts and interest and equity in contracts which he received. Complainant's accountant testified that McCaulley collected a total of $5,198.88 of the accounts receivable and unfinished contracts of the old corporation. Upon cross-examination it was brought out that the sum of $2,888.34 of the total collected was derived from the contracts. It does not appear what portion of this amount represented the "interest and equity" assigned to McCaulley.

The proofs as to the application of the proceeds are likewise unsatisfactory. For example, a number of invoices were introduced and represented as "receipted bills" aggregating $3,618.76, paid by McCaulley from the assets of the corporation, "everyone" of which "is dated prior to December 31, 1937, and the date of payment is subsequent to December 31, 1937." In point of fact, a number of the invoices totaling $530.41 are marked paid during 1937; others totaling $733.96 are dated, as well as paid, and are

for materials supplied in 1938; and others aggregating $1,-129.50 bear no receipt mark at all. Under the circumstances, McCaulley's general testimony that he applied all sums collected to corporate indebtedness, including payment on account of notes of the corporation upon which he was personally liable, is hardly sufficient. Having admitted receiving a transfer of property of the corporation, and it having been shown that the transfer was without consideration, to the prejudice of creditors, the burden fell upon him to establish by clear and convincing proof a proper application of every penny's worth of the property received. This burden he has failed to sustain.

Respondents contend that liability may not be asserted against the transferee by this complainant because the latter has not obtained a judgment upon which there has been an unsatisfied execution. Complainant's claim was computed at the rate provided by the statute, upon the basis of the corporation's own report of wages paid. The exact amount of the claim was set up on the corporate books, and appears in the financial statement as of December 31, 1937. McCaulley testified that he had not disputed the claim. Thus, the validity and amount of the claim are established. In *Berwick v. Associated Gas & Electric Co., et al.*, 20 *Del. Ch.* 265, 174 *A.* 122, 124, Chancellor Wolcott, after stating the proposition that if all of a corporation's assets be disposed of without consideration, or distributed among its stockholders, a creditor of the corporation may pursue those assets on the theory that in equity they are burdened with a lien in his favor, said:

"Nor is it required in such cases that the creditor shall have first reduced his claim to judgment, for the right to relief in those cases does not depend upon a showing that the creditor has exhausted his remedies at law and is without remedy save in equity. He does not seek a remedy in aid of law. He seeks relief grounded upon an equity distinct in itself. When that is so, a judgment at law and a return on execution of nulla bona is not required as a condition precedent to equitable relief. *Cobb v. Interstate Mortgage Corp.*, [4 Cir.], 20 *F.*(2*d*) 786."

The same reasoning, and hence the same rule logically apply as well where the creditor seeks to enforce the liability of the transferee, as where he asserts a lien upon specific assets. Consequently, the objection made is without merit.

In addition to other prayers, complainant has asked for a decree directing McCaulley to pay complainant's demand against the old corporation. This form of relief has not been put in question and appears appropriate under the facts of the case.

A decree accordingly will be advised.