**N. B. DREW**

v.

**The UNITED STATES.**

**The VALLEY NATIONAL BANK OF ARIZONA**, Executor of the Estate of William F. Drew, Deceased

v.

**The UNITED STATES.**

Nos. 322–62, 324–62.

United States Court of Claims.

Nov. 10, 1966.

See also 340 F.2d 365, 169 Ct.Cl. 69.

W. Lee McLane, Jr., Phoenix, Ariz., attorney of record, for plaintiffs.

William C. Ballard, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen., Richard M. Roberts, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

PER CURIAM.

This case was referred to Trial Commissioner Roald A. Hogenson with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on July 18, 1966. On August 23, 1966, defendant filed a motion that the court adopt the commissioner's findings of fact, opinion and recommended conclusion of law. No exceptions to the commissioner's opinion nor response or objection to the defendant's motion have been filed by plaintiffs and the time for so filing pursuant to the Rules of the court has expired. Since the court agrees with the trial commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Defendant's said motion to adopt is granted and plaintiffs are, therefore, not entitled to recover and their petitions are dismissed.

## OPINION OF COMMISSIONER [*]

HOGENSON, Commissioner:

These are consolidated actions brought by taxpayers for a refund of income taxes and assessed interest paid by them as transferees of a dissolved corporation, the F. P. Drew & Sons Lumber Co., Inc., for the taxable year 1956 and the first 4 months of 1957 in the aggregate amount of $11,377.08 plus interest.[1]

Prior to the liquidation and dissolution of F. P. Drew & Sons Lumber Co., Inc., an Arizona corporation (hereinafter referred to as the corporation), William F. Drew, N. B. Drew, and Cecil L. L. Drew, who were brothers, were the sole stockholders, each owning one-third of

---

[*] The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

[1.] These cases were previously before the court upon taxpayers' motion for summary judgment on the question as to whether the deficiency here involved and assessed against the taxpayers as transferees was barred by § 6501(d) of the Internal Revenue Code of 1954. See 340 F.2d 365, 169 Ct.Cl. 69 (1965).

the issued and outstanding stock. On April 26, 1957, the corporation, pursuant to a plan of liquidation,[2] distributed all of its assets in approximately equal shares to its three stockholders, except for a cash reserve hereinafter described. On May 29, 1959, the Commissioner of Internal Revenue, pursuant to § 6901(a)[3] of the Internal Revenue Code of 1954, issued an assessment against N. B. Drew and William F. Drew[4] (hereinafter referred to as taxpayers), as transferees of the F. P. Drew & Sons Lumber Co., Inc., for corporate income taxes owed by the corporation for the 1956 taxable year and the taxable period from January 1, 1957 to April 30, 1957.[5] The liability of the corporation for these taxes is not questioned here, but taxpayers contend that they are not liable as transferees for the corporation's unpaid taxes under § 6901(a) (1), claiming that at the time of the dissolution, the corporation was neither insolvent nor thereby rendered insolvent.

 It is well settled that § 6901 neither creates nor defines any substantive transferee liability, but instead provides an administrative procedure whereby the Internal Revenue Service may collect from a transferee or transferees

the unpaid taxes of the transferor, for which under state law the transferees are liable. Commissioner v. Stern, 357 U.S. 39, 42, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); Ochs v. United States, 305 F.2d 844, 848, 158 Ct.Cl. 115, 119–120 (1962). The extent to which taxpayers are liable, as transferees, for the income taxes of a transferor-corporation is determined by substantive state law. Under the general rule known as the "trust fund theory," it is held that where stockholders receive the assets of a corporation upon liquidation and leave the corporation without sufficient assets to pay its creditors, then its stockholders are required to respond to the full value of the assets received. Wood v. Dummer, 30 Fed.Cas. pp. 435, 436, No. 17,944 (1824); Neill v. Phinney, 245 F.2d 645 (5th Cir. 1957); 19 C.J.S. Corporations § 1760 (1940). The trust fund theory has been held to be the law of Arizona. Valley Bank v. Malcolm, 23 Ariz. 395, 204 P. 207, 211 (1922). The law of Arizona determining transferee liability was stated as follows in Love v. Bracamonte, 29 Ariz. 227, 235, 240 P. 351, 353 (1925); modified in a respect not here material, 29 Ariz. 357, 241 P. 514 (1925); and expressly applied by the U. S. Court of Appeals, Ninth Circuit, in Coca-Cola Bottling Co. of

2. The Shareholders' Agreement and plan of liquidation, dated March 6, 1957, provided, among other things, for dissolution and liquidation of the corporation pursuant to Arizona law and § 333 of the Internal Revenue Code of 1954 and for distribution of the assets to the three stockholders on April 25, 1957 after "first setting aside a cash reserve for federal and state income taxes and any other miscellaneous expenses or debts owed by the corporation."

3. Section 6901(a) (1) (A) (i) provides:
 (a) Method of collection.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
 (1) Income, estate, and gift taxes.
 (A) Transferees.—The liability, at law or in equity, of a transferee of property—

 (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),
 * * * * *
 in respect of the tax imposed by subtitle A or B.

4. William F. Drew died January 14, 1960, and the Valley National Bank was appointed executor of the estate.

5. No deficiency assessment was made against Cecil L. L. Drew, the third stockholder. Previously, Cecil had paid $2,014.30 plus interest on account of the unpaid taxes of the corporation. Internal Revenue reduced the principal amount of deficiency assessment against the taxpayers by $2,014.30 from $12,054.24 to $10,039.94. The $10,039.94 plus accrued interest of $1,337.14 comprise the $11,377.08 paid by the taxpayers, for which they seek refund.

Tucson v. Commissioner, 334 F.2d 875, 877 (9th Cir. 1964):

> * * * the settled law of this jurisdiction, and generally, is that a transferee of an insolvent corporation takes the assets of such corporation subject to the payment of its legitimate debts and holds the same in trust for that purpose * * *.[6]

When a corporation has been dissolved and all its assets distributed, it is not necessary for the Commissioner of Internal Revenue to first proceed against the transferor-corporation since any such proceeding would be useless. United States v. Fairall, 16 F.2d 328 (S.D.N.Y.1926); United States v. Garfunkel, 52 F.2d 727 (S.D.N.Y.1931); Fairless v. Commissioner, 67 F.2d 475 (6th Cir. 1933); Commissioner v. Kuckenberg, 309 F.2d 202 (9th Cir. 1962). However, where adequate provisions have been made for payment of the corporation's debts, the Commissioner may not assert transferee liability against the stockholders without first proceeding against the trust fund provided. William A. Moorhead, 22 B.T.A. 858, 869–870 (1931).

Taxpayers contend that the defendant has the burden of proving that the transferor was rendered insolvent by reason of the transfer and unable to pay the tax or taxes due and owing by it at the time of the transfer, relying upon United States v. Russell, 177 F. Supp. 871, 873 (D.R.I.1959). On the other hand, defendant contends that the taxpayers have the burden of overcoming the presumption of correctness attached to the assessment made by the Internal Revenue Service, including the burden of showing the absence of transferee liability; that under the trust fund theory, solvency or insolvency makes no difference when transferee liability is asserted against stockholders for assets received by them in liquidation of a corporation; and that, alternatively, the corporation was rendered insolvent as a result of the dissolution. Since Arizona law governs as to whether taxpayers are liable as transferees, the controlling substantive rule is that upon the liquidation and dissolution of a corporation, the stockholders are liable as transferees when adequate provisions have not been made for payment of the corporation's obligations, or in other words, when insolvency results from the liquidation. See n. 6, supra, and Coca-Cola Bottling Co. of Tucson v. Commissioner, supra.

In my view of this case, it is unnecessary to decide the burden of proof issue, since the evidence fully warrants the conclusion that the taxpayers are liable as transferees for the corporation's unpaid taxes. Without prejudice to its position on this issue, defendant introduced sufficient evidence to establish a prima facie case that the corporation was rendered insolvent by the liquidation, and it follows under Arizona law that the taxpayers are liable as transferees.

Proceeding first to the facts surrounding the dissolution, the stockholders on March 6, 1957, entered into an agreement to dissolve and liquidate the corporation. The plan of liquidation called for dissolution and liquidation pursuant to Arizona law and § 333 of the Internal Revenue Code of 1954, and for the setting aside of a cash reserve for payment of "federal and state income taxes and any other miscellaneous expenses or debts owed by the corporation." Pursuant to the plan, the stockholders set aside the amount of $12,658.40 as a cash reserve to pay corporation liabilities of $11,000 for taxes, and about $1,600 in miscellaneous expenses. In determining the amount of reserve necessary to be set aside to pay the obligations of the corporation, the stockholders failed to include any amount

---

6. This rule of law is also, in effect, established by statute in Arizona. See 14 Ariz. Rev.Stat.Ann. (Uniform Fraudulent Conveyance Act), §§ 44–1001 through 44–1013 (1956). Moreover, 3 Ariz.Rev.Stat. Ann. § 10–361 (1956) requires that before a corporation be dissolved it is necessary that adequate provisions be made for the protection of the corporation's creditors.

for payment of $10,187.93 to the city of Mesa, Arizona, for certain special improvement assessments, and it is the subsequent disposition of the reserve for the payment of these obligations which forms the crux of these cases.

At some time in 1953, the city of Mesa made assessments against several parcels of real estate owned by the corporation for some unexplained improvements. The special assessments constituted a lien upon several parcels of the corporation's real property, the property being security for payment of the municipal bonds which were issued to provide funds for the improvements and were payable in installments over a 10-year period. By April 1957, the liens for the special assessments totaled $10,187.93 and remained liens upon the corporate property after liquidation of the corporation.

On April 26, 1957, all the assets of the corporation except the cash reserve were distributed in a 1-month liquidation to the three stockholders, with Cecil receiving the real property encumbered by the city of Mesa special improvement assessments. In May 1957, Cecil discovered that no provision had been made for payment of the special improvement assessments. Pursuant to an agreement between the stockholders, dated April 4, 1957,[7] Cecil, as Treasurer, caused the corporation on May 10, 1957, to issue its check to him for the sum of $10,187.93.[8]

This payment was made from the cash reserve created for the payment of corporation debts on the advice of Cecil's attorney who counseled him to withdraw the amount of the special assessments from the cash reserve as authorized by the April 4, 1957, agreement of the stockholders. Thus, as a result of this withdrawal, the corporation was unable to pay its income taxes for 1957 when they became due, and the additional income taxes for 1956, subsequently assessed.

Taxpayers contend that they are not liable for the corporation's taxes as transferees because the corporation was not rendered insolvent as a result of transfers made to the taxpayers, but that only Cecil L. L. Drew is liable because the corporation was rendered insolvent as a result of the distribution to him on May 10th. Thus, taxpayers contends that the time element is crucial in that the insolvency of the corporation did not result until Cecil received the distribution on May 10th.

Taxpayers assert that the reason the corporation was solvent on April 26, 1957 (the date the corporation assets were distributed less the cash reserve to pay debts), is that the assessments of the city of Mesa for the special improvements were not a liability of the corporation. In support of this contention taxpayers rely upon the fact that the assessments were not carried as a liability on the books and records of the corporation and,

---

7. The agreement, signed by all three stockholders, provided in part:

 With respect to special assessments, upon distribution, the total face amount of the balance of unpaid special assessments, but excluding interest, shall be first deducted from the corporate funds prior to distribution of cash to the shareholders.

8. From this withdrawal, taxpayers would have us infer that Cecil may have been guilty of some improper dealings with the corporate funds because he caused the check to be drawn to him personally. This inference is rejected because there is no reasonable foundation in the record therefor. Cecil L. L. Drew was the only officer of the corporation authorized to sign checks of the corporation. Moreover, Cecil received in liquidation the property encumbered by the bonds, and it appears only proper that he receive the proceeds to pay off the liens, as agreed by the stockholders. In fact, Cecil did pay off the liens as each installment fell due. See finding No. 23. The agreement dated April 4, 1957, and signed by all three stockholders, specifically provided for payment of these liens out of corporate funds. Moreover, the plan of liquidation provided for the reserve to pay "any other miscellaneous expenses or debts owed by the corporation" and this, it would appear, would constitute additional authorization for Cecil's withdrawal.

further that since the bonds were payable in annual installments over a period of 10 years, the city of Mesa could not have secured a judgment on April 26, 1957, against the corporation in the amount of $10,817.93.

■ The short answer to this contention is that lack of notations on the corporate records do not govern whether the corporation was liable for a debt. Moreover, taxpayers' argument that the assessments were not a liability of the corporation because the city of Mesa could not have secured a judgment against the corporation is illusory. The special assessments constituted a lien upon the property of the corporation. The liability would be no different than that of a mortgage, payable in installments. Such a liability would undoubtedly be considered in determining the net worth of the corporation and surely would be considered in determining a person's insolvency under Arizona law, that is, whether "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute or matured." [9] In reality, had the corporation not been dissolved, it could not be argued that the special assessments were not a liability because the corporation would have had to pay off the liens in order to protect its property from foreclosure.

■ Taxpayers, in arguing that the corporation was solvent when corporate assets were distributed to them, that Cecil's subsequent withdrawal from the reserve is what rendered the corporation insolvent, and that therefore the Commissioner had proceeded against the wrong parties, have overlooked the well-established doctrine that where a series of distributions in liquidation occur, to establish liability of a transferee who received assets prior to insolvency, it need only be shown that the distributions ultimately rendered the corporation-transferor insolvent, especially when it is evident that the distributions were made pursuant to an integrated plan of liquidation, as was certainly the case here. Phillips v. Commissioner, 283 U.S. 589, 604, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); Benoit v. Commissioner, 238 F.2d 485, 492–493 (1st Cir. 1956); Borall Corp. v. Commissioner, 167 F.2d 865, 870 (2d Cir. 1948); Botz v. Helvering, Commissioner, 134 F.2d 538, 543 (8th Cir. 1943).

The crucial facts in these cases are that when the taxes became due the corporation had insufficient funds to pay them, and that the inability of the corporation to pay the taxes resulted from dissolution and complete liquidation of the corporation, pursuant to which the stockholders provided an inadequate reserve to pay all debts and obligations of the corporation, while plaintiffs received assets of the corporation substantially greater in value than the amounts of the unpaid taxes. The stockholders created a reserve in the amount of only $12,658.40, whereas they knew the corporation had liabilities of some $1,600 in miscellaneous debts, $10,187 for the special improvements to corporate property, and an estimated $11,000 in taxes. When the taxes became due and owing, the corporation was insolvent.

■ Plaintiffs' contention that the Commissioner could assess the unpaid taxes only against Cecil L. L. Drew cannot be sustained. As stated above, the distribution to Cecil on May 10, 1957, was in reality part of the overall plan of liquidation of the corporation which rendered the corporation insolvent. The error of the taxpayers in failing to set up an adequate reserve cannot reasonably be held to prejudice the rights of the defendant. The liability of the stockholders of a dissolved corporation for the corporation's unpaid taxes is joint and several, and the total deficiency may be assessed and collected from any one or

9. 14 Arizona Revised Statutes Annotated § 44–1002 (1956) defines insolvency in these terms.

more of several transferees without join-der of others. Phillips v. Commissioner, supra.

Accordingly, defendant's assessment against taxpayers was proper, and tax-payers are not entitled to recover.