386 F.2d 1002
 SOUTHERN ARIZONA BANK AND TRUST COMPANY, a Corporation, and Peggy L. Martin, Executors of the Estate of George Martin, Deceased, and Peggy L. Martin,
v.
The UNITED STATES.
 No. 285-64.
 United States Court of Claims.
 November 9, 1967.
 
 Scott P. Crampton, Washington, D. C., attorney of record, for plaintiffs. Korner, Doyle, Worth & Crampton and Stanley Worth, Washington, D. C., of counsel.
 Leonard S. Togman, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.
 
 OPINION
 
 1
 DAVIS, Judge*
 
 
 2
 The Southern Arizona Bank and Trust Company is an executor of George Martin, an Arizona resident. He and his wife Peggy (who is a co-executor and also a plaintiff in her own right) filed a joint federal income tax return for the calendar year 1961, paid the tax shown, and thereafter paid a deficiency of $10,651.02 (plus $756.08 interest) for that year. This action seeks to recover those sums (plus interest). Claim for refund was timely filed and denied, and the same basis for recovery is now asserted. For convenience, George Martin is sometimes called the plaintiff.
 
 
 3
 In 1961, plaintiff paid attorneys' fees and other legal expenses in the total amount of $23,659.42 in contesting the determination of tax deficiencies of his liquidated Arizona corporation (Crystal Coca-Cola Bottling Company) and the transferee liability of Coca-Cola Bottling Company of Tucson, Inc. (Cola-Cola Bottling), another Arizona corporation. The issue here is whether such expenditures were deductible by Mr. and Mrs. Martin under § 162(a)[1] or § 212(3)[2] of the Internal Revenue Code of 1954.
 
 
 4
 Plaintiff owned all of the stock of Crystal. In 1955, he sold all of this stock to Samuel E. Gersten and Lawrence D. Mayer, who organized Coca-Cola Bottling to carry on the business of Crystal. As provided in the stock sales agreement, which was ratified and adopted by the new corporation, plaintiff transferred the Crystal stock to Coca-Cola Bottling which issued its promissory note for $1,450,000 as consideration. As part of the sales agreement, plaintiff agreed that he would indemnify Gersten and Mayer and their new corporation for any taxes owed by Crystal for periods prior to the closing, which occurred November 1, 1955, and it was further agreed that amounts paid by the buyers for these tax claims could at their election be collected from plaintiff or deducted from payments due him, provided, however, that plaintiff would first have the right to contest or litigate at his own expense any such claim in the name of the old or the new company.
 
 
 5
 Pursuant to the terms of the stock sales agreement, Crystal was liquidated and its assets transferred to Coca-Cola Bottling, effective November 1, 1955. Thereafter, the Internal Revenue Service issued to Coca-Cola Bottling a statutory notice of transferee liability, asserting that Crystal owed income taxes and excess profits taxes in the amount of $117,057.46 for its tax years 1951 through 1955. Under the indemnity clause of the stock sales agreement, plaintiff contested this determination of deficiencies and transferee liability in the name of Coca-Cola Bottling. In the Tax Court of the United States the parties filed a written agreement, specifying how the amounts of the determined deficiencies would be adjusted and computed if transferee liability were sustained. After a hearing, the Tax Court decided that Coca-Cola Bottling was liable as transferee for Crystal's tax deficiencies, which were redetermined in the amount of $50,872.16. This decision was upheld by the Ninth Circuit. Coca-Cola Bottling Co. of Tucson v. Commissioner of Internal Revenue, 37 T.C. 1006 (1962), affirmed 334 F.2d 875 (C. A. 9, 1964).
 
 
 6
 In connection with the prosecution of that case, plaintiff in 1961 paid $23,659.42 for legal and accounting services, witness expenses, and printing costs. A deduction for this amount was taken in the 1961 federal income tax return, which, as already noted, was disallowed by the Internal Revenue Service, and a statutory notice of deficiency issued, after an adjustment for the gain to be reported.
 
 
 7
 Plaintiffs argue that since the litigation of the Coca-Cola Bottling case resulted in a decrease from $117,057.46 to $50,872.16 of the income tax deficiencies of Crystal, Mr. Martin was amply justified in incurring the legal expenses here involved,[3] and in deducting them either under § 162(a), or, more specifically, under § 212(3), as "ordinary and necessary expenses paid * * * during the taxable year * * * in connection with the determination * * * of any tax."
 
 
 8
 Our writing task is simplified by the plaintiffs' correct concession that they are not entitled to recover unless the Martins are first found to have been the transferees of Crystal or of Crystal's transferee, Coca-Cola Bottling.[4] The answer to that threshold issue we find wholly dispositive. On this record we must conclude that the Martins have not been shown to have been such transferees.
 
 
 9
 This is the kind of case in which the determination whether one is a transferee depends primarily on the law of the particular state. "The extent to which taxpayers are liable, as transferees, for the income taxes of a transferor-corporation is determined by substantive state law." Drew v. United States, 367 F.2d 828, 830, 177 Ct.Cl. 458, 461 (1966). There is no reason to believe that under Arizona (or general) law Mr. Martin became liable for the taxes of Crystal, either directly as a transferee or mediately as a transferee of Coca-Cola Bottling (which has been authoritatively found to be a transferee). He was, of course, the sole owner of Crystal's stock, but he elected to operate his bottling business in corporate form, and could not thereafter disregard Crystal's separate legal entity to claim that he was the actual owner. Cf. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406 (1940). And it is a truism that neither the state nor the Federal Government would pierce the veil simply because he had been the owner of all of Crystal's stock. The tax obligations were solely those of Crystal, not of its stockholder as such or individually.
 
 
 10
 Moreover, plaintiff did not receive any of Crystal's assets on its liquidation; Cola-Cola Bottling was the sole distributee of that property. What Mr. Martin did was to divest himself of the ownership of Crystal's stock, leaving the new stockholder (Coca-Cola Bottling) to determine what to do with Crystal's assets. That new owner took the assets for itself. So far as this record shows, none went to Mr. Martin.
 
 
 11
 Arizona follows the accepted rule that where stockholders of a corporation receive its assets on liquidation and leave it without sufficient property to pay its creditors, then those stockholders are required to respond to creditors up to the full value of the assets received. Drew v. United States, supra, 367 F.2d at 830-831, 177 Ct.Cl. at 461-462. That is why Coca-Cola Bottling, which received Crystal's stock and assets, was held liable as the latter's transferee. Coca-Cola Bottling Co. of Tucson v. Commissioner of Internal Revenue, supra, 334 F.2d 875. But it is so well accepted as to go almost without saying that a mere creditor is not a transferee of property and is not so liable. To the extent, therefore, that Mr. Martin was a creditor who had not received Crystal's assets he was clearly not responsible for Crystal's taxes.
 
 
 12
 In seeking to pin the label of transferee on Martin, plaintiffs stress the promissory note which he obtained for his Crystal stock and for which the Coca-Cola Bottling stock was pledged as security. The terms of this note are not in evidence, and plaintiffs have not shown that it gave Martin any greater rights than the normal pledgee. We must assume, then, that by virtue of this pledge he did not become the owner or controller of the Coca-Cola Bottling stock or of that company's property. He was not the dominant or controlling figure. Rather, he was merely a conventionally secured creditor of Bottling who had formerly owned Crystal's stock but no longer had control of that company or its assets. It follows that his status as a past stockholder of Crystal, his position as a present creditor of Bottling, and his holding of the promissory note did not deprive Crystal of any assets or transfer those assets to him from Coca-Cola Bottling. The creditors of Crystal were harmed by Cola-Cola Bottling's liquidation of Crystal and ingestion of its assets; they were not harmed by Martin's actions or by his mere creditor's relationship to the transferee corporation. Cf. Vendig v. Commissioner of Internal Revenue, 229 F.2d 93, 94-96 (C. A. 2, 1956).
 
 
 13
 Nor did the indemnity agreement operate to make Mr. Martin a transferee. This promise was part of the consideration he provided for Coca-Cola Bottling's promissory note issued for the purchase of all of the Crystal stock. The agreement did not make Martin a stockholder or owner of Bottling or of Crystal, and it took nothing from either corporation. Also, as the Ninth Circuit said in Cola-Cola Bottling Co. of Tucson, supra, 334 F.2d at 879: "We find no basis for interpreting Martin's promise as an assumption of any part of Crystal's debts or as an extension of a guarantee to Crystal's creditors that they would be paid."
 
 
 14
 Accordingly, we hold that the Martins have not been proved to have been transferees liable for the taxes imposed on Crystal, and that they could not deduct the legal fees and other expenses incident to the Tax Court proceeding against the true transferee, Coca-Cola Bottling. Those expenditures flowed solely from the contractual indemnity agreement and not from any transferee obligation of the Martins.
 
 
 15
 For these reasons, the plaintiffs are not entitled to recover and their petition is dismissed.
 
 
 
 Notes:
 
 
 *
 We are indebted to Trial Commissioner Roald A. Hogenson for his opinion, part of which we have adopted. We reach the same result, on one of the grounds he took, but do not consider other points on which he wrote
 
 
 [1]
 § 162. Trade or business expenses
 (a) In general.
 There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including —
 (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;
 * * * * *
 
 
 [2]
 § 212. Expenses for production of income
 In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year —
 (1) for the production or collection of income;
 (2) for the management, conservation, or maintenance of property held for the production of income; or
 (3) in connection with the determination, collection, or refund of any tax.
 
 
 [3]
 No contention is made that the legal expenditures were unreasonable in amount
 
 
 [4]
 When § 212(3) refers to "any tax", it means the individual's own tax or a tax for which he is legally liable to the Government. See United States v. Davis, 370 U.S. 65, 74-75, 82 S.Ct. 1190, 8 L. Ed.2d 335 (1962); Carpenter v. United States, 338 F.2d 366, 369, 168 Ct.Cl. 7, 10-12 (1964); Id. at 14-17, 338 F.2d at 370-372 (dissenting opinion); and the reports of the Congressional committees on the change which became § 212(g): H.Rep. No. 1337, 83d Cong., 2d Sess., pp. 29, A. 59; S.Rep. No. 1622, 83d Cong., 2d Sess., pp. 34, 218, reprinted in 1954 U.S.Code Cong. & Admin.News, pp. 4017, 4054, 4196, 4621, 4665, 4855
 
 
 COLLINS, Judge (dissenting):
 
 16
 I would hold that plaintiff should be allowed to deduct under section 212(3) of the Internal Revenue Code of 1954 the legal expenses he incurred in contesting the determination of Crystal's tax deficiencies — deficiencies which, to the extent collected by the Government, diminished the plaintiff's own estate. By applying the holding of the Davis[1] case to the instant case, the court is unjustifiably extending that holding to a case controlled by wholly different factual circumstances.
 
 
 17
 In the first place, the statute clearly states that an individual may deduct "all the ordinary and necessary expenses paid * * * during the taxable year * * in connection with the determination * * * of any tax." (Emphasis supplied.) The restriction imposed by the majority opinion, that the tax be one for which the individual is legally liable to the Government, appears nowhere in the statute. The legislative history is also devoid of any such restriction on deductibility. The applicable section of the House Report reads as follows:
 
 
 18
 * * * A new provision added by your committee allows a deduction for expenses connected with determination, collection, or refund of any tax liability.[2] (Emphasis supplied.)
 
 
 19
 The detailed discussion of the bill provides, in part, as follows:
 
 
 20
 Paragraph (3) is new and is designed to permit the deduction by an individual of legal and other expenses paid or incurred in connection with a contested tax liability, whether the contest be Federal, State, or municipal taxes, or whether the tax be income, estate, gift, property, and so forth. Any expenses incurred in contesting any liability collected as a tax or as a part of the tax will be deductible.[3] (Emphasis supplied.)
 
 
 21
 The identical language is employed in the Senate Report.[4]
 
 
 22
 The gloss on the words of the statute emanated from the Supreme Court case of United States v. Davis, supra. However, nothing in the language or holding of that case would require that plaintiff be deprived of his deduction in the instant case. The Davis case involved a transfer of appreciated property by the taxpayer to his former wife pursuant to a property settlement agreement incorporated into a divorce decree. As part of the settlement, taxpayer agreed to pay his wife's legal expenses, which expenses included $2,500 for services concerning tax matters relative to the property settlement. The Supreme Court upheld the Court of Claims in holding that the $2,500 paid to the wife's attorney could not be deducted by the taxpayer. The reasoning of the Supreme Court is significant:
 
 
 23
 * * * Here the fees paid her attorney do not appear to be "in connection with the determination, collection or refund" of any tax of the taxpayer. As the Court of Claims found, the wife's attorney "considered the problems from the standpoint of his client alone. Certainly then it cannot be said that * * * [his] advice was directed to plaintiff's tax problems * * *." 152 Ct.Cl., at 805, 287 F.2d, at 171. We therefore conclude, as did the Court of Claims, that those fees were not a deductible item to the taxpayer.
 
 
 24
 370 U.S. at 74-75, 82 S.Ct. at 1195.
 
 
 25
 In short, the taxpayer had absolutely no connection with the tax to be paid by his wife, other than the fact that he paid the legal fees in connection with its determination. In other words, he merely agreed to pay the legal fees, not the amount of the tax itself. Whether his wife should subsequently be assessed a deficiency, or somehow even be granted a refund, was of no concern to the taxpayer. Under these circumstances the Court was certainly justified in finding that the tax being determined was in no way a tax of the taxpayer. The taxpayer was not legally liable for the amount of the tax to the Government, to his wife, or to anyone.
 
 
 26
 In contrast, in the instant case, plaintiff agreed that he would indemnify Gersten and Mayer and their new corporation for any taxes owed by Crystal for periods prior to the sale on November 1, 1955. The amount of any tax deficiency ultimately determined would become a personal liability of plaintiff, since he had obligated himself to pay it in the contract of sale. This is all that should be necessary for the application of section 212(3). The tax advice here was directed to plaintiff's problems, and any deficiency would ultimately result in a diminution of plaintiff's estate.[5]
 
 
 27
 For these reasons, I believe that plaintiff is entitled to take his deductions of "any expenses incurred in contesting any liability collected as a tax or as a part of the tax" (emphasis supplied), as stated in both the Senate and House Reports, and "all the ordinary and necessary expenses paid or incurred during the taxable year * * * in connection with the determination, collection, or refund of any tax," as stated clearly in the statute. That statute does not make any exceptions to the deductions allowed.
 
 
 
 Notes:
 
 
 [1]
 United States v. Davis, 370 U.S. 65, 74, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962)
 
 
 [2]
 H.R.Rep. No. 1337, 83d Cong., 2d Sess. 29 (1954-3 U.S.Code Cong. & Admin. News at p. 4054)
 
 
 [3]
 H.R.Rep. No. 1337, 83d Cong., 2d Sess. A 59 (1954-3 U.S.Code Cong. & Admin. News at p. 4196)
 
 
 [4]
 S.Rep. No. 1622, 83d Cong., 2d Sess. 34, 218 (1954-3 U.S.Code Cong. & Admin. News at pp. 4665, 4855)
 
 
 [5]
 In the Court of Claims opinion in theDavis case, one of the reasons given for denying the deduction was that the attorney's fees were not connected with the taxpayer's own estate.
 In my opinion, the case of Carpenter v. United States, 338 F.2d 366, 168 Ct.Cl. 7 (1964) is inapposite.