**Philip T. and Edith W. SHARPLES**

v.

**The UNITED STATES.**

No. 63–73.

United States Court of Claims.

April 14, 1976.

William L. Goldman, Washington, D. C., for plaintiff; Thomas E. Jenks, Washington, D. C., atty. of record for plaintiff; John M. Skilling, Jr., Washington, D. C., and Herbert L. Awe, Washington, D. C., of counsel.

Allan C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen., Scott P. Crampton, Washington, D. C., for defendant; Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before NICHOLS, KASHIWA and KUNZIG, Judges.

OPINION

KUNZIG, Judge.

In this income tax refund suit plaintiff seeks a 1966 deduction for legal expenses incurred while resisting a Venezuelan tax

deficiency. The potential Venezuelan tax liability devolved on plaintiff as the recipient of assets from a liquidated corporation that would have incurred the tax. The issue comes before the court for resolution based upon the parties' stipulation of facts pursuant to Ct.Cl. Rule 134(b)(2). We hold that plaintiff is entitled to deduct the legal expenses under the provisions of subsection 212(3) of the Internal Revenue Code of 1954.[1]

As stipulated, Philip Sharples (plaintiff)[2] was the majority shareholder of Sharples Oil Corp. (SOC), an entity organized under the laws of Delaware, until its 1963–64 liquidation. In 1957, SOC acquired a leasehold interest in certain Venezuelan oil properties. By 1960, SOC had decided to sell the leasehold to a subsidiary of Pure Oil Co. (Pure). SOC accomplished this objective by creating a subsidiary, Sharples-Venezuela Oil Corp. (S–V). SOC transferred the leasehold to S–V and received all of the S–V stock in return. S–V then sold the leasehold to Pure. Both Pure and S–V treated this 1960 transaction as a non-taxable sale under the Venezuelan law.

In 1963–64, SOC (including S–V) liquidated. Plaintiff received various liquidating distributions as a transferee. Dissolution became final in March 1964. Nearly seven months later, Venezuela issued a notice to SOC of proposed tax deficiencies from the 1960 sale. Delaware law would have imposed personal liability on the former SOC shareholders to pay the tax.[3] However, plaintiff retained Venezuelan counsel to fight the Venezuelan tax deficiency.

Eventually these efforts were successful, and the tax avoided. Plaintiff paid Venezuelan counsel $168,609.15. In his 1966 U.S. income tax return, he deducted the legal expenses. The Internal Revenue Service (IRS) disallowed this deduction, treating the payments as an additional capital contribution to SOC. The IRS assessed a deficiency which plaintiff paid. After the IRS rejected his subsequent refund claim, plaintiff timely brought the present action.

Plaintiff justifies his 1966 deduction of the Venezuelan legal fees as "ordinary and necessary expenses paid or incurred * * * in connection with the determination, collection, or refund of any tax." § 212(3), Int.Rev.Code of 1954. Plaintiff buttresses this argument by pointing to the income tax regulations. "[E]xpenses paid or incurred * * * for tax counsel * * * or in connection with any proceedings involved in determining the extent of his tax liability or in contesting his tax liability are deductible." Treas.Reg. § 1.212–1(*l*).

Defendant resists plaintiff's use of the rather broad provisions of subsection 212(3) and the regulations by urging application of two exceptions to deductibility. Both exceptions involve variations of what has been called the "origin of the claim" rule.[4] The first exception arises in conjunction with

---

**1.** § 212(3), Int.Rev.Code of 1954 provides:
"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year— * * * in connection with the determination, collection, or refund of any tax."

**2.** For convenience only Mr. Sharples will be referred to as plaintiff. Mrs. Sharples is a party in the instant action merely because the tax returns involved were filed jointly.

**3.** Under Delaware law if all of a corporation's assets are disposed of without consideration or *distributed among its shareholders,* a creditor of the corporation is entitled to pursue those assets. *Unemployment Comp. Comm'n v. Geo. W. McCaulley & Son, Inc.,* 26 Del.Ch. 113, 22 A.2d 862 (1941); *Berwick v. Associated Gas & Elec. Co.,* 20 Del.Ch. 265, 174 A. 122 (1934).

Where a corporation distributes assets to a shareholder leaving unsatisfied creditors, the creditors may recover directly from the distributees. *John Julian Constr. Co. v. Monarch Builders, Inc.,* 306 A.2d 29, 35 (Del.Super.1973), aff'd, 324 A.2d 208 (Del.Supr.1974).

**4.** The phrase "origin of the claim" stems from the opinion of the Supreme Court in *Woodward v. Commissioner,* 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970). Construing the decision in *United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 626, 9 L.Ed.2d 570 (1963), the Court noted that the proper test for deductibility should focus on "the *origin* and character of the claim against the taxpayer." *Woodward, supra,* 397 U.S. at 578, 90 S.Ct. at 1306, 25 L.Ed.2d at 583 (emphasis added).

subsection 212(3). It looks to the origin of the tax claim in terms of the *person* liable for the tax. A taxpayer receives a deduction for expenses incurred in contesting his own tax, but cannot deduct expenses attributable to resisting a tax imposed on another. The Government argues that Sharples may not use subsection 212(3) in the present action because the Venezuelan tax was incurred by SOC, not plaintiff.

Until the instant case, the second exception has been applied to deny only subsection *212(2)* and *162(a)* deductions.[5] This second version of the "origin of the claim" rule looks to the *transaction* from which the tax liability arose (initial transaction). As a general rule, a taxpayer must subtract from the proceeds of a capital transaction (*i. e.* capitalize) all expenses which arise, directly or indirectly, from the capital transaction. Defendant would have us enlarge this second exception in the present action to apply not only to subsection 212(2), but also to 212(3). Under this rationale, defendant argues, we would have to deny plaintiff's 1966 deduction because plaintiff incurred the legal fees as a result of the SOC liquidation, a capital transaction.

The court rejects defendant's attempts to remove this case from subsection 212(3) by use of the "origin of the claim" doctrine. We hold that plaintiff may deduct the legal expenses under subsection 212(3).

I. *Subsection 212(3):*

We begin our analysis by examining the provisions of subsection 212(3). This statute provides:

> In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year * * * in connection with the determination, collec-

tion, or refund of any tax. [§ 212(3), Int.Rev.Code of 1954].

The legislative history of subsection 212(3) illustrates the breadth that Congress intended for this statute. "*Any expenses* incurred in contesting *any liability* collected as a tax or as a part of the tax will be deductible." H.Rep.No.1337, 83d Cong., 2d Sess. A 59 (1954) U.S.Code Cong. & Admin. News 1954, p. 4196. *See also* H.Rep.No. 1337, *supra* at p. 29 and S.Rep.No.1622, 83d Cong., 2d Sess., 34, 218 (1954).

Application of the clear language of subsection 212(3) would usually compel our holding for plaintiff, granting him the right to a deduction in the instant case for expenses incurred in fighting the Venezuelan tax. However, we must first deal with defendant's "origin of the claim" arguments in its attempt to override application of subsection 212(3).

II. *Origin of the claim—person taxed:*

In *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), *reh. denied,* 371 U.S. 854, 83 S.Ct. 14, 9 L.Ed.2d 92 (1962), a taxpayer paid his wife's legal expenses incurred pursuant to a divorce settlement. Part of such legal expense was directed toward his wife's tax treatment of property transferred during the divorce. The Supreme Court denied taxpayer's claim for a deduction, reasoning that subsection 212(3) only applied to the taxpayer's legal expenses and not expenses paid for the benefit of another.

> As to the deduction of the wife's [legal] fees, we read the statute, if applicable to this type of tax expense, to include only the expenses of the taxpayer himself and not those of his wife. Here the fees paid her attorney do not appear to be 'in connection with the determination, collection, or refund' of any tax of the taxpay-

---

**5.** Subsection 162(a) governs the deductibility of *trade or business* expenses. *See* note 7, *infra.* Subsection 212(2) allows deductions for personal expenses incurred "for management, conservation, or maintenance of *property held for the production of income.*" *See* note 8, *infra.* Subsection 212(3) controls deductions for personal expenses paid in resolving *tax liabilities.*

*See* note 1, *supra.* While the three statutes are related in that they all deal with deductions, they are unrelated in that each deals with a separate type of deductible expense.

Note that plaintiff relies only upon subsection 212(3) and *not* on subsections 212(2) and 162(a) in this refund suit.

er. [*United States v. Davis, supra* at 74, 82 S.Ct. at 1195, 8 L.Ed.2d at 344].

Later, in 1967, the Court of Claims further dealt with this subsection 212(3) exception. The court was faced with a case in which the taxpayer incurred legal expenses by resisting a tax liability of a corporation. Taxpayer's obligation to pay the debt was based on an indemnity agreement. The court held that the indemnity agreement did not make the corporation's legal expenses "those of the taxpayer" for purposes of subsection 212(3). Only if the taxpayer incurred the expense himself or by operation of law as a transferee could the expenses be deducted under subsection 212(3). *Southern Arizona Bank and Trust Co. v. United States*, 386 F.2d 1002, 1005, 181 Ct.Cl. 426, 429–30 (1967), *cert. denied*, 391 U.S. 967, 88 S.Ct. 2032, 20 L.Ed.2d 879 (1968).

In short, under the first "origin of the claim" exception the court must go beyond the statutory provisions of subsection 212(3) to determine the taxpayer's entitlement to a deduction. If the tax liability is personal to the taxpayer, either because it is his liability or because the liability is imposed on him by operation of law, subsection 212(3) applies. *Southern Arizona Bank, supra*. If, however, the tax obligation is that of another, subsection 212(3) is of no avail to the taxpayer.

Defendant would have the court find the instant tax liability to be that of SOC rather than plaintiff. The defendant is correct in its view that the original tax liability belonged to SOC. However, defendant ignores the fact that liability *for* the Venezuelan tax devolved upon plaintiff at the time of the liquidation by operation of Delaware law.[6] Plaintiff's liability as created by Delaware law made him responsible for the debt within the test established by *Southern Arizona Bank*. The tax liability was personal to the taxpayer. Defendant's first argument is inapplicable to the present facts. Plaintiff is not precluded from gaining the benefit of subsection 212(3).

III. *"Origin of the claim"—initial transaction:*

Defendant further urges the court to enlarge the second "origin of the claim" exception in the instant case. In this second argument, defendant relies upon the rationale inherent in capitalization treatment of certain expenditures. Where expenses arise in connection with a capital transaction, the taxpayer must capitalize such expenses rather than deduct them from ordinary income. As stated above, defendant would have us enlarge this second exception to apply to subsection 212(3) as well as subsection 212(2). The liquidation of SOC was a capital transaction. Since the legal expenses arose in connection with a capital transaction reasons defendant, they should be capitalized by plaintiff rather than deducted under subsection 212(3).

We evaluate defendant's second argument in the context of the clear language of the statute, its legislative history, case law and policy considerations. Defendant's "initial transaction" version of the "origin of the claim" rule cannot be upheld in the present fact situation.

Again, we start with the clear wording of subsection 212(3). This provision grants a deduction for "expenses incurred" in conjunction with "any tax,"—certainly the clearest, most compelling reason to reject defendant's attempts to engraft an exception onto subsection 212(3). "[T]he ordinary and commonly understood meaning shall be attributed to the terms employed in the statute, unless a contrary meaning is clearly intended." *Benton v. United States*, 488 F.2d 1017, 1020, 203 Ct.Cl. 263, 269 (1973). "[T]he unambiguous wording of a statute shall be given its plain and commonly understood meaning." *Selman v. United States*, 498 F.2d 1354, 1356, 204 Ct.Cl. 675, 680 (1974). *See also, Sode v. United States*, 531 F.2d 531 (Ct.Cl., 1976). *Prudential Ins. Co. v. United States*, 319 F.2d 161, 166, 162 Ct.Cl. 55, 65 (1963). Plaintiff is entitled to deduct the expenses incurred in fighting the Venezuelan tax under the clear wording of subsection 212(3). Defendant has not

---

**6.** See discussion of applicable Delaware law at note 3, *supra*.

demonstrated that Congress intended to limit the statute by the "initial transaction" exception.

Further, defendant's own regulations underscore the breadth of subsection 212(3) and give no hint of any "initial transaction" exception. "Expenses paid * * * in conjunction with *any proceedings* involved in determining the extent of [taxpayer's] tax liability or *in contesting his tax liability* are deductible." Treas.Reg. § 1.212–1(*l*) (emphasis added).

Congress, too, demonstrated its desire to have subsection 212(3) apply in a sweeping manner. "Any expenses incurred in contesting any liability collected as a tax or as part of the tax will be deductible." S.Rep. No.1622, *supra* at 218; H.Rep.No.1337, *supra* at A 59 U.S.Code Cong. & Admin.News 1954, pp. 4196, 4855. Again, there is no indication of any intent that the "initial transaction" version of the "origin of the claim" rule override the clear meaning of subsection 212(3).

Despite the clear wording of subsection 212(3), the regulations and legislative history, defendant argues that the holdings in *Arrowsmith v. Commissioner,* 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952), *reh. denied,* 344 U.S. 900, 73 S.Ct. 273, 97 L.Ed. 696 (1952), *Woodward v. Commissioner,* 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970) and *United States v. Hilton Hotels Corp.,* 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970) compel adoption of its "initial transaction" exception in the subsection 212(3) area. In *Arrowsmith,* the Supreme Court looked to the nature of the original transaction to deny business expense deductions claimed under the predecessor of subsection 162(a).[7] Since the expenses in question arose from a capital transaction, reasoned the Court, expenses incident thereto should have been treated as capital items. This doctrine was later applied in both the sub-

section 162(a) and 212(2)[8] contexts in *Woodward* and *Hilton Hotels.* Again, the nature of the original transaction was crucial to the determination. Where the original transaction was a capital transaction, expenses flowing therefrom had to be capitalized. Defendant contends that since the "initial transaction" exception overrides subsections 162(a) and 212(2) it should also override subsection 212(3).

The short answer to defendant's argument is that the statute, the regulations and the legislative history of subsection 212(3) provide *no different treatment* for expenses incurred in fighting a tax which arose from a capital transaction as opposed to expenses for contesting a tax which arose from a non-capital transaction.

Further, to the best of our knowledge, no court has ever extended the *Arrowsmith* initial transaction rule to override subsection 212(3). Defendant has not directed our attention to any such case, and we have been unable to discover one. To the contrary, the cases to date dealing with subsection 212(3) seem without exception to have assumed that if the expense relates to a taxpayer's personal tax liability, the inquiry is complete and a subsection 212(3) deduction allowable. *See, e. g., Munn v. United States,* 455 F.2d 1028, 197 Ct.Cl. 233 (1972); *Carpenter v. United States,* 338 F.2d 366, 168 Ct.Cl. 7 (1964); *Palmquist v. United States,* 284 F.Supp. 577, 579 (N.D.Cal.1967); *Bonnyman v. United States,* 156 F.Supp. 625 (E.D.Tenn.1957), *aff'd,* 261 F.2d 835 (6th Cir. 1958). Particularly notable along these lines is *Collins v. Commissioner,* 54 T.C. 1656 (1970). In *Collins,* the Tax Court allowed taxpayers a subsection 212(3) deduction for Certified Public Accountant (CPA) expenses incurred in tax planning despite the fact that much of the CPA's advice was directed to the purchase of an apartment building as an investment. Although the

---

**7.** Subsection 162(a) provides in part:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *"

**8.** Subsection 212(2) provides:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income."

CPA expenses arose in a capital transaction, taxpayers were still allowed to use subsection 212(3). In short, defendant's argument that the *Arrowsmith* "initial transaction" rule overrides subsection 212(2) does not find acceptance in case law.

In addition to principles of statutory construction and case law, policy considerations compel rejection of defendant's "initial transaction" exception to subsection 212(3). The philosophy inherent in subsection 212(3) seems to be based on the idea that taxpayers should be encouraged to assert their legal rights by contesting imposition of unjustified taxes. Defendant attempts to overcome this strong philosophy with the rationale that stems from the "origin of the claim" rule. This competing rationale rests on the belief that all expenses which stem from a capital transaction should rationally be "matched" or equated with all gains from the same capital transaction and the expenses should receive identical tax treatment as the gains. The "origin of the claim" reasoning is of some weight, but is not strong enough to overcome the subsection 212(3) philosophy. Given a choice between mere consistency of tax treatment embodied in the "origin of the claim" doctrine and encouraging taxpayers to assert their right to contest illegal taxes, we prefer the latter alternative.

Beyond the factors which compel us to reject defendant's personal liability and "initial transaction" exceptions, other overall policy considerations support our conclusion that plaintiff is entitled to a subsection 212(3) deduction for the legal expenses involved in the present action.

First, plaintiff's decision to contest the improper Venezuelan tax created a savings for defendant in non-tax areas. At a time when the United States balance of payments was unfavorable, plaintiff's resistance of the Venezuelan taxes prevented an even further imbalance. Had plaintiff been discouraged from fighting the Venezuelan tax by defendant's hostile interpretation of subsection 212(3), certainly the unfavorable U.S. trade balance would have increased.

In terms of economic philosophy, certainly, where a foreign tax is concerned, taxpayers should be encouraged to resist the imposition of unwarranted tax liability. Rejecting defendant's "origin of the claim" arguments should further this goal.

Second, defendant's negative attitude toward plaintiff's attempted deduction could have an additional negative impact on the Treasury. Had plaintiff paid the Venezuelan tax, he might have been entitled to a U.S. tax credit for his foreign tax payment,[9] and the Government would have lost additional revenue. Generally, efforts by U.S. taxpayers to reduce their foreign taxes will at the same time diminish credits on their U.S. taxes. Thus, the IRS has a direct stake in the success of U.S. taxpayers contesting foreign taxes. One might well question the position of the IRS against plaintiff's deduction in the instant case. Our holding avoids such a problem.

Third, acceptance of defendant's "origin of the claim" arguments would create a distinction without a logical difference in the instant case. Presumably, if plaintiff paid a tax attorney for advice as to whether or not to fight the Venezuelan tax from the point of view of planning its own tax affairs, such legal expenses would be deductible under subsection 212(3). Yet defendant would disallow the further legal expenses incurred in actually contesting the tax. We see no logical reason for treating either legal expense differently from the other. Again, we are led to reject defendant's attempt to engraft or broaden subsection 212(3) exceptions.

In summary, we are faced with a situation where taxpayer incurred legal expenses in 1966 pursuant to his resistance of a Venezuelan tax liability which would have devolved upon him as recipient of assets from a liquidated corporation, personally, by operation of Delaware law. The legal expenses were properly deductible from plaintiff's 1966 income under subsection 212(3) of the Internal Revenue Code of 1954. Neither the fact that plaintiff's cor-

---

9. *See* § 901, et seq., Int.Rev.Code of 1954, for the Foreign Tax Credit provisions.

poration was initially liable for Venezuelan tax, nor the fact that the legal expenses arise in connection with a capital transaction precludes plaintiff's use of subsection 212(3). This conclusion emerges from Treasury Regulations, Congressional intent, case law, the philosophy inherent in subsection 212(3) and simply, *from the clear language of the statute.*

## CONCLUSION OF LAW

Upon the foregoing opinion, which contains the essential findings of fact as stipulated by the parties, the court concludes as a matter of law that plaintiff's claim for refund should be allowed and judgment is entered for plaintiff. The amount of the recovery will be determined pursuant to Ct.Cl. Rule 131(c).