STATE OF MISSOURI, EX REL., R. NEWTON MCDOWELL ET AL., RELATORS, v. HON. HARRY J. LIBBY, JUDGE, RESPONDENT.—175 S. W. (2d) 171.

Kansas City Court of Appeals. November 8, 1943.

*Blatchford Downing* and *Caldwell, Downing, Noble & Garrity* for relator.

38

*B. R. Williams, Robert N. Jones, Alpha L. Burns, H. K. West, M. D. Campbell* and *Roach & Brenner* for respondent.

BLAND, J.—This is an original proceeding in prohibition wherein relators seek to prohibit the respondent, Judge of the Circuit Court of Macon County, from enforcing, by execution certain judgments claimed to be void.

The case has been submitted upon a motion for judgment upon the pleadings filed to respondent's amended return.

The facts show that on or about September 20, 1940, there was filed in the Circuit Court of Macon County, at La Plata, two cases entitled, respectively, U. F. Ketcham, v. R. Newton McDowell, Incorporated, No. 3811, and Kenneth Keithley, v. R. Newton McDowell, Incorporated, No. 3812, in which said named plaintiffs sued to recover from said defendant damages for personal injuries arising out of an automobile collision; plaintiff Ketcham claiming damages in the sum of $7500 and plaintiff Keithley in the sum of $1000. The allegatons of the petitions in said cases were identical, except as to the names of the plaintiffs and the amount of the damages prayed and plaintiff, Keithley, alleged that he was riding as a guest in the motor car being driven by plaintiff, Ketcham, at the time of the accident. Summonses in said cases were served upon defendant, amended petitions in said causes were filed and, on November 8, 1940, answers were filed on behalf of the defendant in each case by its attorney, consisting of a general denial in the Keithley case, and a general denial and plea of contributory negligence in the Ketcham case.

On or about April 17, 1941, said attorney withdrew as attorney for the defendant in each of said cases and mailed a notice of such withdrawal to the defendant corporation, addressed, however, in care of a certain insurance broker, who customarily handled insurance matters for the defendant corporation and through whom the defense of said causes had been referred to said attorney. However, there was no insurance in favor of said defendant corporation covering the accident and, by inadvertance, no knowledge of the withdrawal of said attorney was received by any of the relators.

The defendant, R. Newton McDowell, Inc., was a corporation duly organized on October 21, 1930, under the laws of this State but, prior to June 1, 1941, it became insolvent and suspended its ordinary and lawful business. On January 1, 1942, the Secretary of State declared a forfeiture of its charter for failure to comply with the corporation laws of the State, relating to registration, filing of annual statements,

anti-trust affidavits, etc., in accordance with the provisions of Article 1, Chapter 33, Revised Statutes Missouri 1939. At this time the relators constituted the last board of directors of said corporation and, accordingly, became the statutory trustees thereof, in accordance with the provisions of Section 5094, Revised Statutes Missouri 1939, and were vested with title to all properties and assets of said corporation as such trustees.

The corporation held no title or transferable interest in real estate, and no attempt has been made to procure a rescission of the forfeiture of its charter under the provisions of Section 5093, Revised Statutes Missouri 1939. Neither defendant, R. Newton McDowell, Inc., nor relators, as its statutory trustees, nor any person acting for defendant or relators, filed any suggestion in the Circuit Court concerning the action of the Secretary of State in declaring a forfeiture of the charter of the corporation, nor, was any plea in abatement filed based upon such forfeiture, nor did relators request that they be substituted as parties defendant in said cause.

Afterwards, on June 17, 1942, plaintiffs appeared in the causes, defendant failing to appear, and the causes were tried and the court found the issues for the plaintiffs and against the defendant corporation and assessed plaintiff's damages in the sum of $5195 in the Ketcham case and the sum of $650 in the Keithley case; the court having no knowledge of the forfeiture of the charter at the time. No motion for a new trial was filed, no appeal taken by any one from these judgments.

Afterwards, on August 13, 1942, general executions were issued on these judgments, relators having no knowledge of the rendition of the judgments until after the executions were issued. The executions not only directed the sheriff to levy upon and seize the goods, property, effects and credits of the corporation but also those of these relators as statutory trustees thereof, although no judgment had been rendered against the relators.

After the suing out of the writs of execution, plaintiffs caused to be summoned several corporations and individuals, as garnishees, each of whom appeared in court and filed answers to the interrogatories propounded to them by plaintiffs, whereupon, plaintiffs filed answers denying the truth of the answers of the garnishees. Garnishees then filed their answers thereto, and the issues thus made are pending and undetermined in the Circuit Court.

On the issues so joined by the plaintiffs and the garnishees, *subpoenas duces tecum* were issued, directed to said garnishee to produce the books, papers and records in their possession. *Subpoenas duces tecum* were also issued and directed to relators and R. Newton McDowell, Inc.

On October 15, 1942, eight months and fifteen days after the cancellation of the certificate of incorporation of R. Newton Mc-

Dowell, Inc., and approximately four months after the verdicts and judgments for plaintiffs, and after executions had issued on said judgments, and garnishees had been summoned, relators, in their capacity as statutory trustees, filed in the Circuit Court in said cases, their motions in the nature of writs of error *coram nobis*. On November 5, 1942, said motions were submitted and heard and the court overruled and denied them.

Afterwards, relators filed in said court, in each of said cases, their joint motions for a new trial, which was overruled and, on November 10, 1942, relators filed their application and affidavit for appeal in each case, and appeals were granted to this court.

Afterwards, on the 27th day of March, 1943, relators filed their application in this court for a writ of prohibition and a preliminary rule was issued against the respondent, prohibiting him from exercising jurisdiction in said garnishment proceedings.

It is insisted by the relators that the judgments rendered against R. Newton McDowell, Inc., after its charter had been forfeited, and without relators, as statutory trustees, having been substituted as parties defendant, are void; that, consequently, they cannot support executions and garnishment proceedings thereunder; that the court had no jurisdiction to proceed and that the preliminary rule in prohibition should be made permanent; that the charter of R. Newton McDowell, Inc., was forfeited on January 1, 1942, according to the provisions of Section 5091, Revised Statutes Missouri 1939 and, by reason thereof, its corporate life was extinguished and, thereupon, ceased to exist; that by reason of the provisions of section 5036, Revised Statutes Missouri 1939, the relators, thereupon, became trustees of the corporation, with duties, among others, "with full powers to settle the affairs, collect the outstanding debts, etc., . . . to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same." [See, also, Sec. 5094, R. S. Mo. 1939.]

A forfeiture of a corporation's charter by the Secretary of State for failure to comply with the laws of the State, effects a dissolution of the corporation. The dissolution of a corporation is the termination of its corporate existence and its extinction as an entity or body. At the common law the property of a dissolved corporation escheated to the Crown and all debts due to or from it were extinguished, and all pending suits and actions by and against it were abated. Unless there is a statute to the contrary, a judgment cannot be rendered against a dissolved corporation. Such a judgment is void.

To obviate the harshness and effect of the common law a great number of states, including our own, have enacted statutes providing that the directors and president or manager of a dissolved corporation shall become its trustees for the purposes specified in such statutes. [See Secs. 5036, 5094, R. S. Mo. 1939.] These statutes were designed

for the purpose of providing the machinery by which actions may be continued against dissolved corporations and to prevent the abatement of actions by reason of the corporation's dissolution. They provide that the named officers are and become trustees of the corporation upon its dissolution and, as such, are its legal representatives. It follows that upon the dissolution of the corporation the trustees became proper and necessary parties to the proceedings and in this case it was necessary to substitute such trustees for the corporation, as parties defendant, in order that the actions might have proceeded. They could no longer be maintained in the name of the dissolved corporation and the judgments rendered against it were void. [Bruun v. Katz Drug Co., 351 Mo. 731; Watkins v. Mayer, 103 S. W. (2d) 566, 569; Estel v. Madgard Inv. Co., 46 S. W. (2d) 193; Collins v. Martin, 248 S. W. 941; Hecht Bros. Clo. Co. v. Walker, 35 S. W. (2d) 372; Nudelman v. Trimbles, 40 S. W. 475; State ex rel. v. Collins, 34 Fed. Sup. 550.]

However, respondent insists that as the Circuit Court of Macon County had jurisdiction over the class of cases pending before it, and the answers of the defendant corporation having admitted that it was a corporation, and the Circuit Court having acquired jurisdiction of the person of the defendant and the subject-matter of the suits, it could not be divested of its jurisdiction thereafter.

It is the general rule that, once jurisdiction is properly acquired, it will not be defeated by the occurrence of subsequent events or change in circumstances, even though the particular events or circumstances be such as would have prevented jurisdiction from attaching in the first instance. However, this is not a universal rule and whether jurisdiction is divested depends primarily upon the nature of the action and governing statute and, also, upon the nature of jurisdiction with which the court is invested. It is held that one of the contingencies which might serve to defeat jurisdiction of the court to proceed with the case would be the death of a party to the cause. [See Newman v. Weinstein, 75 S. W. (2d) 871, 872; Cole v. Parker-Washington Co., 276 Mo. 220, 237; State ex rel. v. Seehorn, 127 S. W. (2d) 418.]

While there is a difference between the death of a human being and the dissolution of a corporation, yet, by analogy, the same rule should be applicable to both in the disposition of a point of this kind. It is expressly held in the Bruun case, *supra,* that a cause of action may not be prosecuted against a dissolved corporation in its name after its charter has been forfeited under the provisions of the statutes now under consideration.

However, it is claimed by the respondent that the act of the Secretary of State in cancelling the corporate certificate of R. Newton Mc-Dowell, Inc., was merely a suspension and not a dissolution. In this

connection respondent calls our attention to section 5093, Revised Statutes Missouri 1939, reading as follows:

"The Secretary of State may rescind the forfeiture of the corporate rights of any corporation, declared under the provisions of this article, upon presentation of an affidavit signed by the president, or secretary, of such corporation, setting forth that such corporation has not suspended its ordinary and lawful business within one year next before the filing of such affidavit, or that the corporation at the time of the forfeiture was declared held title, or transferable interest, in real estate. The Secretary of State may demand such other and further proof as he may deem necessary before rescinding any such forfeiture. For rescinding such forfeiture there shall be paid to the State a fee of fifty dollars: Provided, no such forfeiture shall be rescinded after one year from the date of its entry for less than the fees required by law for original corporation."

Respondent claims that by reason of the provisions of this statute the charter of the corporation was only suspended until such time as it could apply for a rescission of the forfeiture under the statute, which, respondent says was one year. Respondent calls our attention to the fact that the trials in the Ketcham and Keithley cases were had within one year from the time of the forfeiture of the charter of R. Newton McDowell, Inc., and, in fact, within one year from the time that relators filed their motions in the nature of writs of error *coram nobis.*

Respondent is in error in saying that a corporation has but one year in which to apply for rescission of a forfeiture of its charter. It would appear that defendant was in no position to have its charter rescinded at any time, but the statute does not fix any period in which such application for rescission may be made to the Secretary of State. The question, therefore, arises if there is a period when the charter is only in suspension, and not forfeited, how long does that period last? In the case of State ex rel. v. Collins, *supra,* the cases cited by respondent are distinguished and such distinguishment is approved by our Supreme Court in the case of Bruun v. Katz Drug Co., *supra.* In the case of Barron G. Collier, Inc., v. American Cafeteria, 256 S. W. 118, cited by respondent, the forfeiture was rescinded five days after the contract sued upon was entered into and before anything was done under it. The services were rendered after the forfeiture had been rescinded. In discussing that case Judge OTIS said (Section 4629, R. S. Mo. 1929, now section 5101, R. S. Mo. 1939): "No corporation shall maintain an action in any court in this State for the collection of bills or accounts payable or for the enforcement of a contract, made while such corporation is *in suspension,* or after the forefeiture of its certificate, or license, under the provisions of this article, unless it shall have first been reinstated, or the forfeiture entered against it rescinded as in this article provided".

(Italics ours.) "It does not seem to me that this section suggests that a corporation whose 'existence' has been 'forfeited and canceled' and which has been 'dissolved' is merely in suspension, unless perhaps in the case of that corporation with respect to which the action of the secretary later has been rescinded." [See State of Mo. ex rel. v. Collins & Co., 34 Fed. Sup. 550, 553.] We approve of what was said by Judge Otis in that case and need not rule what the effect would be if the statute merely provided for a suspension rather than a forfeiture of the charter.

However, it is claimed by the respondent that the relators as trustees should have notified the court and the creditors of the corporation that R. Newton McDowell, Inc., had ceased doing business and that its corporate charter had been forfeited; that, having failed to do this, relators, as trustees, cannot now object to judgments rendered against the corporation, and have no right to avoid payment of the same out of the property owned by the corporation and held by them as trustees. Furthermore, it is claimed that R. Newton Mc-Dowell, Inc., has been estopped by its failure to file a plea in abatement in said actions.

Of course, there is nothing in the statutes directly stating who shall suggest the dissolution of the corporation in a suit pending against it; but, assuming for the moment that it was the duty of the relators to bring to the attention of the court the fact that the charter of the defendant had been forfeited, what was the effect of their failure to do so? Certainly a non-existent corporation cannot estop itself into existence and it would appear that neither could the statutory trustees do so far, if they could, the practical effect would be that the corporation would be in existence as to the party suing but not in existence as to other persons or creditors, whereas, the statute expressly provides (sections 5036, 5094) that the trustees shall hold the property of the corporation for the benefit of all the creditors and stockholders and shall divide the assets among the stockholders after paying the debts due and owing by the corporation. There is nothing in the statute to indicate that the corporation is to be dissolved for some purposes and continued in existence for others. We think the logic of the situation compels the conclusion that there was no duty upon the part of the relators to suggest the dissolution of the defendant corporation in the Ketcham and Keithley cases; but, if the plaintiffs desired to proceed further in these cases it was their duties to bring the matter to the attention of the court in their respective cases and to make the trustees parties and to obtain jurisdiction over their person by the usual procedure. In fact this appears to have been held to have been the proper procedure in the Bruun case, for the court, after stating plaintiff's contentions therein, one of which was that it was defendant's duty to bring in the individuals constituting the last board of directors as parties, stated that the court was unable to agree

with the contentions of the plaintiff and, later on in the opinion, it is said: "As we have indicated, the party desiring the trustees' presence may take whatever steps he deems proper to secure their presence as defendants." [Citing Nudelman v. Thimbles, *supra*; Macklind Inv. Co. v. Ferry, 108 S. W. (2d) 21; Hecht Bros. Clo. Co. v. Walker, *supra*.]

It appears that a writ of prohibition was denied by the Supreme Court in a case involving the same matters presented in the petition for the writ in the case at bar. Respondent is incorrect in concluding that the action of the Supreme Court is *res adjudicata* of the things now before us. [Dahlberg v. Fisse, 40 S. W. (2d) 606.] There was no opinion written denying the writ but, no doubt, it was denied because the Supreme Court had no jurisdiction to issue it. [State ex rel. v. Nortoni, 201 Mo. 1; State ex rel. v. Reynolds, 275 Mo. 113.]

It is further contended that relators having taken the appeals it has been admitted that they have an adequate remedy by appeal and the application for the writ of prohibition should be denied.

Respondent, in his return, states that, although, he fixed the appeal bonds at the sum of $300, none had been furnished and *that he was proceeding* in the exercise of jurisdiction in the cases *until the time he was notified to take no further action in the cases* by an officer of this court when relators applied for a preliminary rule against respondent (which was long after the appeals were taken). This raises a question, which we do not decide, as to whether the appeals are adequate, as it has been held that after the issuance of the preliminary rule the question as to whether there is an adequate remedy by appeal is immaterial. [State ex rel. v. Cowan, 107 S. W. (2d) 805, and cases cited therein.]

We need not pass upon relators' contention that the respondent is without jurisdiction in the premises because plaintiffs, as alleged creditors of the dissolved corporation, are attempting to gain an undue preference by prosecuting the garnishment proceedings as, from what we have already said, the preliminary rule should be made permanent, and it is so ordered. All concur.