**UNITED STATES of America, Plaintiff,**

**v.**

**GLEN UPTON, INC., et al., Defendants.**

**No. 20717–1.**

United States District Court,
W. D. Missouri, W. D.

July 17, 1974.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., John J. McCarthy, Chief, General Litigation Section, Jeffrey D. Snow, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., Mary A. Schneider, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Jack N. Bohm, Kansas City, Mo., for Glen Upton, Inc.

John S. Gordon, Dean F. Arnold, Bagby, Benjamin & Arnold, Martin B. Dickinson, Sr., Kansas City, Mo., for Swope Parkway Ntl. Bk.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

The present cause is an action brought to foreclose a federal tax lien against a parcel of real property purchased by the defendant from the taxpayer. With regard to the government's claim, which is separately considered pursuant to Rule 42(b) of the Rules of Civil Procedure, the parties have agreed that no oral evidence need be presented and have submitted the case on a stipulated factual record. We have carefully reviewed the Stipulation and the briefs of the parties and make the following findings of fact and state the following conclusions of law:

### I. *Findings of Fact*

The parties' Stipulation established that:

1. On May 12, 1960, Lane Body and Frame Co. was formed as a corporation under Missouri law.

2. On September 6, 1968, Lane Body and Frame Co. executed a Deed of Trust concerning the parcel of real property in issue to William Asjes as Trustee for Linwood Mortgage Company in the amount of $25,000.

3. On January 15, 1969, the Missouri Secretary of State declared the corporate records, privileges and franchises of Lane Body and Frame Co. forfeited and cancelled and the corporation dissolved as of January 1, 1969.

4. On and as of April 24, 1969, pursuant to an Application for Rescinding Forfeiture submitted by Lane Body and Frame Company's last president, Lee B. Hill, the Missouri Secretary of State rescinded the previously described forfeiture and Lane Body and Frame Co. was restored to good standing on the records of the said Secretary of State.

5. On August 27, 1969, the Internal Revenue Service received an Employer's Quarterly Federal Tax Return concerning Lane Body and Frame Co., Inc., from Lee B. Hill who gave his title as "owner;" the return shows a tax due of $2,538.35 for the first quarter of 1969. Also on August 27, 1969 the Internal Revenue Service received a second Employer's Quarterly Federal Tax Return concerning Lane Body and Frame Co., Inc. (on a preaddressed form) from Mary Ann Hill as secretary-treasurer; the return shows a tax due of $3,414.41 for the second quarter of 1969.

6. On September 15, 1969, the Linwood Mortgage Company foreclosed the lien of a Deed of Trust between Lane Body and Frame Co. and Linwood Mortgage Company and William Asjes, Trustee, upon the parcel of real property in

issue and sold same for $25,000 to the Linwood State Bank.

7. On December 26, 1969, the Internal Revenue Service received an Employer's Quarterly Federal Tax Return concerning Lane Body and Frame Co., Inc. (on a preaddressed form) from Lee B. Hill who gave his title as "Pres.;" the return shows a tax due of $2,442.09 for the third quarter of 1969.

8. On October 3, 1969 and October 17, 1969 and December 26, 1969 the United States made assessments (designated as "23C Date") for unpaid withholding taxes against Lane Body and Frame Co., Inc., for, respectively, the second quarter, the first quarter, and the third quarter of that year; during the period November 4, 1969 and March 17, 1970, payments were received by Internal Revenue concerning the above assessments. There remains due and owing the following amounts (which do not include interest): $800 for the first quarter; $2,800 for the second quarter; $2,547.87 for the third quarter, and $2,249.73 for the fourth quarter.

9. On October 3, 1969, and October 17, 1969, and December 26, 1969, the United States gave notice of the assessments described in the preceding paragraph to Lane Body and Frame Co., Inc., and demanded payment thereof for, respectively, the second quarter, the first quarter, and the third quarter of 1969. As indicated in the preceding paragraph some payments were received by Internal Revenue.

10. On January 15, 1970, the Missouri Secretary of State declared the corporate rights, privileges and franchises heretofore conferred upon Lane Body and Frame Co. forfeited and cancelled as of January 1, 1970.

11. On January 19, 1970, Lane Body and Frame Co. and Harry W. Allen, the latter as surety, filed a bond in the amount of $5,500 in the Circuit Court of Jackson County in order to have an opportunity to redeem the parcel of real property in issue.

12. On March 20, 1970 the Internal Revenue Service received an Employer's Quarterly Federal Tax Return concerning Lane Body and Frame Co., Inc., (on a preaddressed form) which return is not signed or dated; the return shows a tax due of $2,232.33 for the fourth quarter of 1969.

13. On March 20, 1970, the United States made an assessment for unpaid withholding taxes against Lane Body and Frame Co., Inc., for the fourth quarter of 1969.

14. On March 20, 1970, the United States gave notice of the assessment described in the preceding paragraph to Lane Body and Frame Co., Inc., and made demand for payment thereof. There remains due and owing (without interest) the sum of $2,249.73.

15. On April 8, 1970, the United States filed a Notice of Federal Tax Lien listing the taxpayer as "Lee B. Hill DBA Lane Body and Frame Co., Inc.," and concerning Federal withholding (941) taxes for the first three quarters of 1969. This notice was filed with the Jackson County Recorder of Deeds under "Hill."

16. On April 14, 1970, the United States filed a Notice of Federal Tax Lien listing the taxpayer as "Lane Body and Frame Co., Inc.," and concerning Federal withholding taxes for the fourth quarter of 1969. This notice was filed with the Jackson County Recorder of Deeds under "Lane."

17. As of December 9, 1970, McDaniel Title Company, agent for Title Insurance Company of Minnesota, made a title search on the Application of Swope Parkway National Bank for a loan policy as concerns the parcel of real property in issue; as the result of this search, it was aware of the Notice of Federal Tax Lien filed on April 8, 1970 against Lee B. Hill DBA Lane Body and Frame Co., Inc. However, McDaniel Title Company failed to search for and become aware of the Notice of Federal Tax Lien filed on April 14, 1970 against Lane Body and Frame Co., Inc.

18. On September 14, 1970, Glen Upton, Inc., by Glen A. Upton, entered into a Real Estate Contract with Lane Body and Frame Co., Inc., by Lee B. Hill to purchase the parcel of real property in issue for $40,000. In order to make this purchase, Glen Upton, Inc., had approached the Swope Parkway National Bank to secure a loan. At no time did Glen Upton, Inc., or any of its officers or employees check with the Jackson County Recorder to determine if any notices of federal tax lien were filed effecting the property.

19. Also, on September 14, 1970, a "trustee's corporation warranty deed" was executed by "L. B. Hill and Mary Ann Hill, Trustees of Lane Body and Frame Co., as the sole surviving officers and members of the last board of directors of Lane Body and Frame Co., a dissolved corporation." This deed was signed in the name of "Lane Body and Frame Company, Inc." by L. B. Hill "Trustee and former president" and Mary Ann Hill, "Trustee and former secretary" of "Lane Body & Frame Co., a dissolved corporation." This deed conveyed whatever right Lane Body and Frame Co., Inc., or Lee B. Hill or Mary Ann Hill had in the parcel of real property in issue to Glen Upton, Inc.

20. Also, on September 14, 1970, a Deed of Trust was executed by Glen Upton, Inc., in favor of Swope Parkway National Bank to secure the afore-described loan of $40,000.

21. On September 15, 1970, a Deed of Release was executed by William Asjes, trustee for Linwood Mortgage Company, concerning the parcel of real property in issue.

22. Also on September 15, 1970, the Swope Parkway National Bank, with regard to the Glen Upton, Inc., loan, wrote checks to the following entities in the following amounts: $9,502.73 to Lane Body and Frame Co., Inc.; $1,228.30 to the County Collector; $351.36 to the City Treasurer; $760.03 to the Swope Parkway National Bank; $349.15 to the City Treasurer and $28,157.58 to Linwood Mortgage Company.

23. On September 16, 1970 Lee B. Hill signed and delivered to McDaniel Title Company for itself and Title Insurance Company of Minnesota a document entitled "Indemnity Agreement" referring to the Notice of Tax Lien filed on April 8, 1970. In this document Lee B. Hill states that the said lien was filed upon him individually and not against Lane Body and Frame Co., and that "the said claimed lien and amount [are] for a personal obligation of the undersigned and not an obligation of said dissolved corporation * * *." Moreover, the document recites that "Lee B. Hill is presently, and has been in the past, making payments thereon his said individual tax obligation, under his agreement with the Government, lienor, to ultimately discharge the same * * *." The document further refers to the sale of the real estate in issue and states that "Lee B. Hill agrees to indemnify and save harmless McDaniel Title Company and Title Insurance Company of Minnesota from any and all claims * * *."

24. On September 17, 1970 William Asjes, Trustee, delivered a Deed of Redemption from the foreclosure of the Deed of Trust concerning the parcel of real property in issue.

25. Also on September 17, 1970, "Lane Body and Frame, Inc., by Trustee former Pres Lee B. Hill" cashed the check received from Swope Parkway National Bank.

## II. *Conclusions of Law*

1. Jurisdiction of this action is conferred upon this Court by Title 28, United States Code, Sections 1340 and 1345, and Title 26, United States Code, Section 7402.

2. The Internal Revenue Service may properly impose a tax lien on the parcel of real property in issue as security for tax liabilities incurred by the statutory trustees of Lane Body & Frame Co., Inc., in operating the business between January 1, 1969 and April 24, 1969.

3. The Internal Revenue Service may properly impose a tax lien on the parcel of real property in issue as security for

tax liabilities incurred by Lane Body & Frame Co., Inc., between April 25, 1969 and December 31, 1969.

4. The Notice of Federal Tax Lien filed on April 8, 1970, listing the taxpayer as "Lee B. Hill DBA Lane Body & Frame Co., Inc." and covering the first three quarters of 1969, met the statutory requirement of notice set forth in 26 U.S.C. § 6323.

5. The Notice of Federal Tax Lien filed on April 14, 1970 listing the taxpayer as "Lane Body & Frame Co., Inc." and covering the fourth quarter of 1969, does not meet the statutory requirement of notice set forth in 26 U.S.C. § 6323.

6. The tax lien against the parcel of real property in issue for the first three quarters of 1969 is valid and prior to any rights which subsequently accrued to the defendant.

7. The tax lien against the parcel of real property in issue for the fourth quarter of 1969 is not valid as against the rights of defendant as a purchaser.

8. The United States is entitled to foreclose its lien in the amount of $6,147.87 plus statutory interest thereon upon the parcel of real property in issue.

### III. *Discussion*

The initial question presented is whether in view of the forfeiture by the Missouri Secretary of State of the Lane Body & Frame Co., Inc. corporate charter for the period from January 1, to April 24, 1969, a lien for taxes incurred during that period may be imposed under 26 U.S.C. § 6321 upon the parcel of property purchased by defendant.

V.A.M.S. § 351.525 sets forth the procedure to be followed in the forfeiture of corporate charters:

If any corporation:

(1) Fails to comply with the provisions of this chapter with respect to registration, the filing of its antitrust affidavit, the filing of its annual report, or the payment of its annual franchise tax on or before the thirty-first day of December;

(2) Procures its franchise through fraud practiced upon the state;

(3) Has continued to exceed or abuse the authority conferred upon it by law, or has continued to violate any section or sections of the criminal code of the state of Missouri after a written demand to discontinue the same shall have been delivered by the secretary of state to the corporation, either personally or by mail; (If mailed, the notice shall be deemed to be delivered five days after it has been deposited in the United States registered mail in a sealed envelope addressed to such corporation at its registered office in this state.)

(4) After written notice by the secretary of state to the last known address, has failed for sixty days to appoint and maintain a registered agent in this state; or

(5) After written notice by the secretary of state to the last known address, has failed for sixty days after change of registered officer or registered agent to file in the office of the secretary of state a statement of such change;

the corporate rights and privileges of the corporation shall be forfeited, and the secretary of state shall thereupon cancel the certificate, or license, of the corporation by appropriate entry on the margin of the record thereof, whereupon all the powers, privileges and franchises conferred upon the corporation by the certificate, or license, shall subject to rescission as provided in this chapter, cease and determine; and the secretary of state shall notify the corporation by mail, addressed to its registered office, as disclosed by the records of his office, that its corporate existence and rights in this state have been forfeited and canceled, and the corporation dissolved subject to rescission as provided in this chapter; and the directors and officers in office when the forfeiture occurs shall be the trustees of the corporation, who shall have full authority to wind

up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets among the shareholders; and the trustees as such shall have power to sue for and recover the debts and property due the corporation, describing it by its corporate name, and may be sued as such; and the trustees shall be jointly and severally responsible to the creditors and shareholders of the corporation to the extent of its property and effects that shall have come into their hands.

Defendant argues that this statute requires that the trustees ˙immediately wind up the corporate affairs, that continuation of the business by the trustees is improper, and that business liabilities incurred by the trustees after forfeiture are their personal liabilities rather than corporate liabilities. This is an unnecessarily narrow reading of the statute.

 Forfeiture of a corporation's charter under V.A.M.S. § 351.525 does not mean that corporate affairs must immediately cease. Indeed, it is clear that even where the trustees choose to wind up the corporation, the business may have to be carried on for some time in order to protect corporate assets. Cf. Eaton, Yale & Towne, Inc. v. Sherman Industrial Equipment Co., 316 F.Supp. 435 (E.D.Mo.1970). Liabilities incurred in the normal course of business subsequent to forfeiture should be considered corporate liabilities, especially where, as here, the forfeiture is quickly rescinded, the corporation's actual operations continue unabated, and creditors have no notice of the break in the corporation's legal status. Cf. Schneider v. Best Truck Lines, 472 S.W.2d 655, 659 (Mo. App.1971); Mo.Atty.Gen.Op. No. 40.

Given this conclusion, the remaining question is whether the steps taken by the IRS were legally sufficient to protect the government's rights. The validity of the tax lien against the defendant, a subsequent purchaser, is controlled by 26 U.S.C. § 6323(a), which states:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

Subsection 6323(f)(3), referred to above, states:

The form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary or his delegate. Such notice shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien.

 It is clear from these sections that, in order for a valid tax lien to arise, a notice in the form prescribed by the Secretary must be filed. In the present case, the notices filed for each of the four quarters were submitted on Form 668 "Notice of Federal Tax Lien under Internal Revenue Laws," as required by the applicable regulation, 26 C.F.R. § 6323–1(a)(3) (1973). On the form filed on April 8, 1970, for the first three quarters of 1969, in the space provided for "Name of Taxpayer" the IRS inserted "Lee B. Hill DBA Lane Body & Frame Co., Inc." On the notice filed on April 14, 1970, for the fourth quarter of 1969, however, the name of "Lane Body & Frame Co., Inc." was inserted in that space. The question is whether either of these descriptions accurately set forth the name of the "Taxpayer," as required by Form 668 and § 6323.

 Under 26 U.S.C. § 6901(a) transferees of corporate assets, who are liable at law or in equity for the transferor's debts, are similarly liable for taxes due from the transferor. The transferee is therefore the "taxpayer" within the meaning of the Internal Revenue Laws and taxes can be assessed against him as if it were an original liability. Cf. Drew v. United States, 367 F.2d 828, 177 Ct.Cl. 458 (1966). However, the transferee is liable only to the extent that state law imposes liability on him for general corporate debts. See, i. e., Southern Arizona Bank & Trust Co. v. United States, 386 F.2d 1002 (1967),

**1034**

cert. den. 391 U.S. 967, 88 S.Ct. 2032, 20 L.Ed.2d 879 (1968).

 The liability of statutory trustees in the event of forfeiture is stated in V.A.M.S. § 351.525, supra. That section makes clear that upon forfeiture the trustees become the corporation's legal representatives. Watkins v. Mayer, 103 S.W.2d 566 (Mo.App.1937). As such, they are proper parties against whom legal action for the collection of corporate debts may be brought, though they are liable only to the extent of remaining corporate assets. See, e. g., State of Missouri ex rel. Darr v. A. B. Collins & Co., 34 F.Supp. 550 (W.D.Mo. 1940); State ex rel. McDowell v. Libby, 238 Mo.App. 36, 175 S.W.2d 171 (1943); Auffenberg v. Hafley, 457 S.W.2d 929 (Mo.App.1970). A notice of tax lien filed subsequent to forfeiture would therefore properly list the trustees as "taxpayers." The notice filed in the name of "Lee B. Hill DBA Lane Body & Frame Co., Inc.," on April 8, 1970 was sufficient to comply with this requirement. See United States v. Sirico, 247 F.Supp. 421 (S.D.N.Y.1965).

Not only was this filing legally proper but it was also actually sufficient to notify the parties of the IRS claim. Defendant was well aware at the time of purchase of the property herein involved that Lee B. Hill was the trustee and legal representative of the defunct corporation, as evidenced by the signatures on the warranty deed of "L. B. and Mary Ann Hill, trustees of Lane Body & Frame Co." While the record before us may not establish that defendant had actual knowledge of the tax liens filed on April 8, 1970, at the time of purchase, they cannot properly claim that any lack of knowledge was caused by the manner in which the notice was filed. Indeed, the fact that McDaniel Title Company ran its title search under the name of "Hill" and actually found the tax lien demonstrates that corporate status and proper filing procedures were readily apparent. For these reasons, we conclude that the notice of tax lien filed on April 8, 1970 for the first three quarters of 1969 is valid against defendant as a subsequent purchaser of the property.

It also follows from the above discussion that the lien for the fourth quarter, filed in the name of "Lane Body & Frame Co., Inc." on April 14, 1970, is not valid. The "taxpayers" on that date were the trustees, and a notice of tax lien would be proper only if drawn in their names. It is irrelevant whether this Court believes it reasonable to have also checked under the corporate name, since the lien imposed by § 6323 is valid only if the required notice is filed.

### IV.

For the reasons stated, it is

Ordered that within ten (10) days the government shall prepare an appropriate judgment in accordance with this opinion, submit the same to counsel for defendant for approval as to form, and thereafter to the Court for entry.