O.B.M., INC., GERARD M. MCALLISTER, TRUSTEE IN LIQUIDATION, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4485–65—4491–65.   Filed July 7, 1969.

*Bernard J. Long* and *Bernard J. Long, Jr.*, for the petitioners.
*Leon M. Kerry* and *Jay S. Hamelburg*, for the respondent.

---

[1] Cases of the following petitioners are consolidated herewith: Burton O'Brien, docket No. 4486–65; Gerard M. McAllister, docket No. 4487–65; Anthony J. McAllister, docket No. 4488–65; James P. McAllister, docket No. 4489–65; Roderick H. McAllister, docket No. 4490–65; and Charles D. McAllister, docket No. 4491–65.

622

624

OPINION

While O.B.M. was in the process of liquidation, it received liquidating distributions from Tidewater in excess of its basis in the Tidewater

stock. The question presented is whether O.B.M. has met the requirements of section 337(a) so that it is not required to recognize the gain it realized on the Tidewater liquidation. Section 337(a) provides:

SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12–month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

The answer depends on whether O.B.M. distributed within the 12–month period all of its assets "less those retained to meet claims." [7]

It is undisputed that O.B.M. did not distribute all of its assets within 12 months of the adoption of the plan of complete liquidation. On June 23, 1962, it still had assets consisting of cash and insurance claims totaling $5,100, the tug *DuBois II* with a minimum value of $3,000, its claim against the City arising out of the O'Brien-Quist joint venture, and the Tidewater stock. On that date, it had liabilities, which were ascertained as to existence and amount, consisting of accounts payable, a liability for an insured damage claim, and the judgment of New York City against the O'Brien-Quist joint venture on account of unpaid general business tax. These liabilities totaled $7,950, and it had assets the value of which were ascertained to be worth at least $8,100—clearly an amount sufficient to cover its liabilities.

The question, then, is why the claim against New York City arising out of the joint venture and the Tidewater stock were not distributed. The petitioners argue that O.B.M., when it adopted its plan of liquidation, directed Mr. McAllister and Mr. Riso to distribute all its assets within 12 months except for those retained to meet claims; that these gentlemen did undertake to distribute all the corporate assets and did in fact distribute substantially all of them within the 12-month period; that in good faith they believed the claim and the stock to be worthless on June 22, 1962, and did not distribute them for that reason; and that section 337 requires no more than such a good-faith attempt to comply with its terms.

The petitioners' contention that the claim against the City was worthless rests on the testimony of Mr. McAllister that he considered

---

[7] The parties agree that O.B.M.'s gain on the Tidewater liquidation is the sort of gain which may go unrecognized under sec. 337. See Rev. Rul. 57–243, 1957–1 C.B. 116; Bittker & Eustice, Federal Income Taxation of Corporations & Shareholders 401 (2d ed. 1966).

it worthless in 1962. However, in 1958, the City offered to settle the suit for $15,000. O.B.M.'s attorney, who was asking $70,000 in settlement, refused this offer, but the City did not withdraw it. At all times until October 1962, the City's offer remained open, and the case could have been settled for that amount. O.B.M. continued to ask for $70,000 until October 1962 when it made a settlement offer of $40,000. At a pretrial conference in October 1962, the judge urged the parties to settle the case for $25,000 and set in motion the machinery which led to actual settlement for that amount in 1963. On the basis of these facts, the conclusion is inescapable that as of June 23, 1962, the case had a minimum settlement value of no less than $15,000. Taking into account witness and attorney fees and expenses to be deducted from any settlement, the lawsuit had a minimum cash value of at least $10,500.

The petitioners argue that whatever the lawsuit's actual value, Mr. McAllister held a good-faith belief that it was without value and that this good-faith belief is sufficient justification under section 337 for the failure to distribute or otherwise dispose of the claim. Mr. McAllister testified that his belief that the suit was worthless was based upon the legal advice which had been received in 1953 and 1954 and the unavailability of certain key witnesses. However, he was unaware of the offer of the City to settle the claim for $15,000. The true state of affairs could and should have been learned in the process of liquidating the corporation in the 12-month period, yet the record discloses no effort on the part of those in charge of the liquidation to learn the correct facts. Mr. McAllister did not consult the counsel handling the litigation as to the chances of recovery or as to the value of the claim.

On the basis of the record before us, we believe that the petitioners have failed to prove that a good-faith attempt was made to comply with the requirements of section 337. We do not fault O.B.M. for lacking perfect vision as to the future course of events. They failed to meet the requirements of the statute, not because they did not correctly anticipate the value of the claim, but because they did not make a serious effort to determine its value as of June 23, 1962. To determine what liability should be anticipated and what assets should be retained to satisfy them calls for the exercise of some judgment on the part of corporate officials arranging for the liquidation of a corporation. Had these corporate officials made a serious effort to determine the value of the claim, we would have a different case, irrespective of whether their forecast turned out to be accurate or inaccurate. However, they have failed to prove that they made such an attempt. They argue that their general purpose was to comply with section 337, that there was no purpose of tax avoidance, and that they were not deliberately

attempting to time the tax consequences for stockholders. Nevertheless, this evidence, even if it is true, fails to demonstrate that they inquired into the value of the claim against the City. In our opinion, a taxpayer who is seeking to qualify for the tax benefit of section 337 must establish more diligence in attempting to meet the requirements of the section. The statute requires that *all* assets be distributed, except for those retained to meet claims, and we think that as a minimum the taxpayer must diligently attempt to determine what assets the corporation has and attempt to distribute them in accordance with this requirement of the statute.

The Tidewater stock presents a slightly different situation. The petitioners contend that this asset also was worthless on June 22, 1962, inasmuch as Tidewater itself had just completed a 12-month liquidation pursuant to section 337 and had retained only such assets as were necessary to meet claims. On brief, both the petitioners and the respondent invite us, in effect, to consider whether Tidewater itself satisfied the requirements of section 337. We decline to do so.

Even if it is assumed that by June 23, 1962, Tidewater had distributed all of its assets except those retained to meet claims, within the requirements of section 337 (and we expressly do not so decide), it does not follow that its stock was worthless. The fact that Tidewater may have acted reasonably in anticipating and providing for its contingent liabilities did not preclude the possibility, which became an actuality, that such claims would not materialize or would be settled for an amount less than anticipated. We think that the fact that after the close of the 12-month period Tidewater became able to make additional distributions to its stockholders is not merely accidental but illustrates the potential value of the stock of a liquidating corporation which retains assets to meet claims. Indeed, although O.B.M.'s officers professed to believe that the Tidewater stock was without value on June 22, 1962, we doubt that they would have been willing to abandon it altogether, thereby giving up any right to possible future distributions from Tidewater. If these officials had exercised due diligence in attempting to comply with the requirements of section 337, they would have recognized the potential value of the Tidewater stock and would have distributed it to the O.B.M. stockholders.[8]

In the alternative, the petitioners attempt to justify the retention of the claim against the City and the Tidewater stock on the basis that they were needed to meet contingent claims against O.B.M. However, this position is inconsistent with the testimony of Mr. McAllister and Mr. Riso that they considered the claim and the stock to be worthless—

---

[8] Because of our conclusion that sec. 337 does not apply in this case, we do not have to face the question concerning the effect of that section on the portion of the gain from the Tidewater stock realized by O.B.M. after the close of the 12-month period.

if they were worthless, then there was no reason to retain them to meet claims. In addition, the petitioners have failed to prove the amounts of the contingent claims or that they made any reasonable effort to ascertain such amounts. At trial and on brief, the petitioners contend that O.B.M. had contingent claims outstanding against it consisting of liquidating expenses, insurance on the tug *Dubois II*, continuing interest on the general business tax judgment, and liability for increased taxes asserted with respect to unaudited tax returns. Yet, the record contains little or no evidence with respect to the likely amount of these claims as of June 23, 1962. Inasmuch as we are not given any indication of the magnitude of these claims, we could not determine what amount of assets might reasonably have been retained to meet them. What is more, it does not appear that Mr. McAllister and Mr. Riso made any serious effort to anticipate the amounts of such claims with any degree of specificity whatsoever. Those who seek to comply with section 337 must make a diligent effort to ascertain as well as possible both the existence and the amounts of claims remaining at the end of the 12-month period, in order to make reasonable provision therefor. There is no evidence that such effort was made with respect to the contingent claims.

The petitioners contend that the respondent is attempting to penalize O.B.M. and its stockholders for the fact that Mr. McAllister and Mr. Riso exercised "conservative" judgment in valuing its assets and determining the amount necessary to meet claims; that is not the ground of our holding. We are not concerned with the business philosophy underlying the business judgment; the question is whether any serious judgment, based on facts ascertained as well as possible, was made at all with respect to the retention of assets to meet claims; and our holding is based upon the petitioners' failure to prove that any such judgment was exercised.

In conclusion, we hold that O.B.M. has not met the requirements of section 337 and that it is therefore taxable on the gain it realized as a result of the liquidation of Tidewater.

The respondent has asserted transferee liability under section 6901 on the part of the individual petitioners for the deficiency asserted against O.B.M. Section 6901 provides a procedure whereby the respondent may collect unpaid taxes from a transferee; the substantive liability of a transferee is a matter of State law. *Commissioner* v. *Stern*, 357 U.S. 39 (1958). The burden of proof is on the respondent to establish that the individual petitioners are liable as transferees for the deficiencies which we have found to have been properly asserted against O.B.M. for its taxable years 1961, 1962, and 1963. Sec. 6902(a).

The amounts paid to the individual petitioners as liquidating distributions were without full and adequate consideration; each distri-

bution was one of a series of distributions in complete liquidation which left O.B.M. insolvent. See *Drew* v. *United States*, 367 F. 2d 828 (Ct. Cl. 1966); *J. Warren Leach*, 21 T.C. 70 (1953). The income tax liability of O.B.M. was accruing from the time of the first distributions in complete liquidation of O.B.M. Under such circumstances, sections 273 and 278 of the New York Debtor and Creditor Law impose liability on the stockholders, in the amount each received as a liquidating distribution, for the claims of O.B.M.'s creditors. The facts therefore fully support the respondent's claim of transferee liability and the record discloses no grounds for our holding to the contrary. See *Archie A. Swinks*, 51 T.C. 13 (1968). The petitioners make no argument and adduced no proof with respect to this issue; their sole stated ground for resisting transferee liability is that O.B.M. was not liable for the claimed deficiencies, a position we have rejected. Since each of the individual petitioners received amounts in excess of the amount of O.B.M.'s deficiencies, we hold that they are each liable as transferees for O.B.M.'s deficiencies in income tax, as here found, plus interest as provided by law.

*Decisions will be entered for the respondent.*