MORRIS M. MIZRAHI, FRANCES MIZRAHI, SAM MIZRAHI, CLARISSA MIZRAHI, SPARTACUS SPA, INC., AND WIGGINESS, INC., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mizrahi v. Commissioner
Docket No. 13958-90.
United States Tax Court
T.C. Memo 1992-200; 1992 Tax Ct. Memo LEXIS 223; 63 T.C.M. (CCH) 2657; April 2, 1992, Filed *223 An appropriate order and decision will be entered for respondent. Morris M. Mizrahi, Frances Mizrahi, Sam Mizrahi, and Clarissa Mizrahi, pro sese. Steven R. Winningham, for respondent. BEGHE
BEGHE
MEMORANDUM OPINION BEGHE, Judge: This case is before us on respondent's motion for summary judgment under Rule 121. [1] Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Morris and Frances Mizrahi
Additions to Tax [1]
Year
Deficiency Sec. 6653(b) 1973
$ 42,322.05
$21,161.03
1974
104,306.48
52,215.74
1975
100,098.32
50,049.16
1976
62,186.38 31,093.19 Sam and Clarissa Mizrahi
Additions to Tax [1]
Year
Deficiency Sec. 6653(b) 1973
$ 44,136.28
$ 22,068.14
1974
108,730.57
54,365.29
1975
97,819.62
48,909.81
1976
72,909.12
36,454.56
*224 Wigginess, Inc.
Additions to Tax
Taxable Year Ended
Deficiency Sec. 6653(b) July 31, 1974
$ 126,486.61
$ 63,243.31
July 31, 1975
119,748.56
59,874.28
July 31, 1976
117,201.98
58,600.99
Spartacus Spa, Inc.
Additions to Tax
Taxable Year Ended
Deficiency Sec. 6653(b) May 31, 1974
$ 58,042.78
$ 29,021.39
May 31, 1975
114,200.58
57,100.29
Respondent also determined the liability as transferees of assets of Wigginess, Inc. (Wigginess), and Spartacus Spa, Inc. (Spartacus Spa), of Morris and Sam Mizrahi (Mizrahi brothers) as follows: Morris Mizrahi
Corporation
Taxable Year Ended Liability
Wigginess
July 31, 1974
$ 127,915.36
Wigginess
July 31, 1975
113,516.83
Wigginess
July 31, 1976
118,449.41
Spartacus Spa
May 31, 1974
68,444.29
Spartacus Spa
May 31, 1975
112,598.42
[1]
*225 The issues for decision are (1) whether petitioners failed to report income on their Federal income tax returns for the taxable years at issue; (2) whether petitioners are liable for fraud additions to tax under section 6653(b); and (3) whether the Mizrahi brothers are transferees of assets of Wigginess and Spartacus Spa. At the time the petition in this case was filed, petitioners Morris and Frances Mizrahi resided in Brooklyn, New York, and petitioners Sam and Clarissa Mizrahi resided in Deal, New Jersey. According to the petition, Wigginess and Spartacus Spa were defunct New York corporations, formerly located in New York, New York, at the time the petition was filed. [2]
*226 Petitioners alleged in their petition that respondent erroneously determined Federal income tax deficiencies and additions to tax for fraud because (1) the statute of limitations for the assessment and collection of Federal income tax had expired prior to respondent's mailing of the statutory notices of deficiency, (2) respondent used proscribed material to make her determinations, (3) respondent's determinations were arbitrary and capricious, and (4) petitioners did not commit fraud with regard to their Federal income tax returns for the taxable years at issue. Respondent timely filed an answer to the petition denying petitioners' assignment of error and affirmatively alleging (1) that all or part of petitioners' underpayments of Federal income tax for the taxable years at issue were due to fraud, and (2) that the Mizrahi brothers are transferees of assets at law and in equity of Wigginess and Spartacus Spa. Respondent subsequently filed a motion requesting that an order be entered that all undenied allegations in respondent's answer be deemed admitted. On November 16, 1990, we notified petitioners that respondent's motion would be denied if petitioners filed a reply as required *227 by Rule 37(a) and (b) on or before December 6, 1990. Petitioners timely filed a reply, and we denied respondent's motion. On August 9, 1991, respondent served petitioners and filed with this Court a Request for Admissions pursuant to Rule 90(b). The requested admissions were as follows: 1. Petitioner Wigginess, Inc., ("Wigginess") was incorporated in New York, New York on November 17, 1971. 2. On January 19, 1973, petitioners Morris Mizrahi and Sam Mizrahi became equal co-owners of Wigginess. Sam Mizrahi was president and Morris Mizrahi was vice-president and secretary. 3. Wigginess operated a massage parlor at 8 East 36th Street, New York, New York 10016, under the name of RELAXATION PLUS, during the years 1973 and 1974, and under the name of SPARTACUS SPA II, during the years 1975 and 1976. 4. Spartacus Spa, Inc., ("Spartacus") is a New York corporation also controlled by Morris Mizrahi and Sam Mizrahi who were equal co-owners of the corporation. Morris Mizrahi was the president and treasurer and Sam Mizrahi was the vice-president and secretary. 5. Spartacus operated a massage parlor under the name of SPARTACUS SPA I at 146 E. 55th St., New York, New York 10022 *228 until May of 1975, and a massage parlor under the same name at 243 E. 55th St., New York, New York 10022 after May of 1975. 6. Although ostensibly the petitioners in this case operated massage parlors, in reality the business conducted by Morris Mizrahi and Sam Mizrahi, through their controlled corporations Wigginess and Spartacus, was prostitution. 7. Morris Mizrahi and Sam Mizrahi completely controlled Wigginess and Spartacus and used identical schemes at both locations to permit prostitution to be conducted at the massage parlors operated by their corporations and to skim cash from those operations. 8. Morris Mizrahi and Sam Mizrahi, petitioners herein, are the same persons who were defendants in the criminal case of United States of America v. Morris Mizrahi and Sam Mizrahi (Southern District of New York, Docket No. 80 Cr. 0528 (MEL)). 9. The respondent herein is a party in privity with the United States of America, the prosecuting party in the aforesaid criminal case in which Morris and Sam Mizrahi, petitioners herein, were defendants. 10. Attached as Exhibit A is a true copy of the indictment filed on February 4, 1981, in the criminal case referred to in request *229 to admit 8 above. 11. On April 9, 1981, Morris Mizrahi and Sam Mizrahi entered pleas of guilty to the charges set forth against them in Count I of said indictment. A true copy of the April 9, 1981 hearing is attached as Exhibit B. 12. On May 29, 1981, judgement was entered against Morris Mizrahi and Sam Mizrahi by the court. True copies of the Judgement and Probation/Commitment Order for each petitioner and the sentencing hearing are attached hereto as collective Exhibit C. 13. The fees paid to the massage parlors operated by Wigginess and Spartacus by patrons were paid predominately in cash and this cash was turned over to Morris and Sam Mizrahi. 14. During the years at issue the massage parlors operated by Wigginess and Spartacus kept two sets of books. The actual receipts of the massage parlors were reflected on the "girls' daily sheets" or "green sheets" which records were routinely shredded at the instructions of the Mizrahi brothers. A second ledger, the "daily income book", was kept for income tax purposes and reflected the amounts actually deposited into the respective corporation's bank account and reported on their respective income tax return. 15. A comparison *230 of the gross receipts of Wigginess, as reflected in the "daily income book" and in the "green sheets" for the period October 7, 1974 to November 3, 1974 reveals that gross receipts of $ 15,783.00 were skimmed from the operation and not reported. In addition, $ 3,640.00 in cash payments from the hostesses, as described in paragraphs 10 and 11 of count one of the indictment (Exhibit A) were received and not reported during the same period. 16. A comparison of the gross receipts of Spartacus as reflected in bank statements and the "green sheets" for October and November 1974 reveals that gross receipts of $ 28,599.00 were skimmed from the operation and not reported. In addition, $ 10,675.00 in cash payments from the hostesses, as described in paragraphs 10 and 11 of count one of the indictment (Exhibit A) were received and not reported during the same period. 17. During all of the years at issue, both Wigginess and Spartacus claimed deductions for wages paid to the hostesses even though the hostesses were required to return all checks received from the massage parlors. 18. Morris Mizrahi and Sam Mizrahi instructed the bookkeeper of the massage parlors operated by Wigginess and *231 Spartacus to destroy all records of gross receipts for the years at issue and purchased a shredding machine for that purpose. 19. The massage parlors' gross receipts were predominately received in cash, the bulk of which was retained by the Mizrahi brothers and neither deposited in the respective corporate bank accounts nor reflected on the respective corporations' income tax returns. 20. During the fiscal years ended ("F.Y.E.") July 31, 1974, 1975 and 1976, Wigginess had additional receipts of $ 255,830.72, $ 227,033.66 and $ 236,899.21, respectively, which were not reported on their income tax returns for said years. 21. Wigginess fraudulently and with intent to evade taxes for the F.Y.E. July 31, 1974, 1975 and 1976, filed false income tax returns for said years that omitted the income from additional receipts and kickbacks. 22. Wigginess's return for F.Y.E. July 31, 1974 included only $ 305,461.18 of the gross receipts of $ 561,291.90 received by the massage parlor in the F.Y.E. July 31, 1974, resulting in an omission of $ 255,830.72 of income. 23. Wigginess's return for F.Y.E. July 31, 1975 included only $ 271,965.00 of the gross receipts of $ 498,998.66 received by *232 the massage parlor in the F.Y.E. July 31, 1975, resulting in an omission of $ 227,033.66 of income. 24. Wigginess's return for F.Y.E. July 31, 1976 included only $ 283,783.00 of the gross receipts of $ 520,682.21 received by the massage parlor in the F.Y.E. July 31, 1976, resulting in an omission of $ 236,899.21 of income. 25. During the F.Y.E. May 31, 1974, and 1975, Spartacus had additional receipts of $ 136,888.58 and $ 225,196.85, respectively, which were not reported on its income tax returns for said years. 26. Spartacus fraudulently and with intent to evade taxes for the F.Y.E. May 31, 1974, and 1975, filed false income tax returns for said years that omitted the income from additional receipts and kickbacks. 27. Spartacus's return for F.Y.E. May 31, 1974 included only $ 138,012.00 of the gross receipts of $ 274,900.58 received by the massage parlor during the F.Y.E. May 31, 1974, resulting in an omission of $ 136,888.58 of income. 28. Spartacus's return for F.Y.E. May 31, 1975 included only $ 227,045.00 of the gross receipts of $ 452,241.85 received by the massage parlor during F.Y.E. May 31, 1975, resulting an an omission of $ 225,196.85 of income. 29. Morris *233 Mizrahi and Sam Mizrahi were the sole stockholders and equal owners of Wigginess and Spartacus during all of the years at issue. 30. During all of the years at issue, Morris Mizrahi and Sam Mizrahi skimmed substantial amounts of cash from Wigginess and Spartacus which amounts represent either constructive dividends from said corporations or other income. 31. During the taxable years 1973, 1974, 1975 and 1976, Morris Mizrahi received cash from Wigginess and Spartacus in the amounts of $ 90,541.95, $ 214,201.15, $ 170,631.81 and $ 75,094.44, respectively, which were not reported on his income tax returns for said years. 32. Morris Mizrahi fraudulently and with intent to evade taxes for the taxable years 1973, 1974, 1975 and 1976, filed false income tax returns for said years that omitted the income from constructive dividends and/or other income from Wigginess and Spartacus (the "massage parlors"). 33. Morris Mizrahi's return for 1973 did not include any of the $ 90,541.95 in cash skimmed from his massage parlors, resulting in an omission of $ 90,541.95 of income. 34. Morris Mizrahi's return for 1974 did not include any of the $ 214,201.15 in cash skimmed from his massage parlors, *234 resulting in an omission of $ 214,201.15 of income. 35. Morris Mizrahi's return for 1975 did not include any of the $ 170,631.81 in cash skimmed from his massage parlors, resulting in an omission of $ 170,631.81 of income. 36. Morris Mizrahi's return for 1976 did not include any of the $ 75,094.44 in cash skimmed from his massage parlors, resulting in an omission of $ 75,094.44 of income. 37. During the taxable years 1973, 1974, 1975 and 1976, Sam Mizrahi received cash from Wigginess and Spartacus in the amounts of $ 90,541.95, $ 214,201.15, $ 170,631.81 and $ 75,094.44, respectively, which were not reported on his income tax returns for said years. 38. Sam Mizrahi fraudulently and with intent to evade taxes for the taxable years 1973, 1974, 1975 and 1976, filed false income tax returns for said years that omitted the income from constructive dividends and/or other income from Wigginess and Spartacus. 39. Sam Mizrahi's return for 1973 did not include any of the $ 90,541.95 in cash skimmed from his massage parlors, resulting in an omission of $ 90,541.95 of income. 40. Sam Mizrahi's return for 1974 did not include any of the $ 214,201.15 in cash skimmed from his massage *235 parlors, resulting in an omission of $ 214,201.15 of income. 41. Sam Mizrahi's return for 1975 did not include any of the $ 170,631.81 in cash skimmed from his massage parlors, resulting in an omission of $ 170,631.81 of income. 42. Sam Mizrahi's return for 1976 did not include any of the $ 75,094.44 in cash skimmed from his massage parlors, resulting in an omission of $ 75,094.44 of income. 43. Morris and Sam Mizrahis' fraudulent omission of specific items of income on their income tax returns filed for the taxable years 1973, 1974, 1975 and 1976 is a part of a four-year pattern of intent to evade taxes. 44. Morris Mizrahi understated his taxable income on his income tax returns for the taxable years 1973, 1974, 1975 and 1976, in the amounts of $ 91,654.75, $ 215,891.15, $ 171,031.81 and $ 75,024.44, respectively. 45. Sam Mizrahi understated his taxable income on his income tax returns for the taxable years 1973, 1974, 1975 and 1976, in the amounts of $ 92,654.88, $ 214,601.16, $ 171,031.81 and $ 124,544.45, respectively. 46. Wigginess, Inc., understated its taxable income on its income tax returns for the F.Y.E. July 31, 1974, 1975 and 1976, in the amounts of $ 267,935.89, *236 $ 259,581.60 and $ 260,721.92, respectively. 47. Spartacus Spa, Inc., understated its taxable income on its income tax returns for the F.Y.E. May 31, 1974 and 1975 in the amounts of $ 141,275.29 and $ 253,895.26, respectively. 48. Morris Mizrahi understated income tax liabilities on his income tax returns for the taxable years 1973, 1974, 1975 and 1976 in the amounts of $ 42,322.05, $ 104,306.48, $ 100,098.32 and $ 62,186.38, respectively. 49. Sam Mizrahi understated his income tax liabilities on his income tax returns for the taxable years 1973, 1974, 1975 and 1976 in the amounts of $ 44,136.28, $ 108,730.57, $ 97,819.62 and $ 72,909.12, respectively. 50. Wigginess, Inc., understated its income tax liabilities on its income tax returns for the F.Y.E. July 31, 1974, 1975 and 1976 in the amounts of $ 126,486.61, $ 119,748.56 and $ 117,201.98, respectively. 51. Spartacus Spa, Inc., understated its income tax liabilities on its income tax returns for the F.Y.E. May 31, 1974 and 1975 in the amounts of $ 58,042.78 and $ 114,200.58, respectively. 52. Morris Mizrahi's and Sam Mizrahi's failure to produce and destruction of records and other information as to the gross receipts *237 of Wigginess, Inc., and Spartacus Spa, Inc., and as to the amount of cash they personally skimmed from the operations of the massage parlors and received as either constructive dividends or as other income to the respondent in connection with the examination of the income tax returns of Wigginess, Inc., for the F.Y.E. July 31, 1974, 1975 and 1976, the examination of the income tax returns of Spartacus Spa, Inc., for the F.Y.E. May 31, 1974 and 1975, and the examinations of their income tax returns for the taxable years 1973, 1974, 1975 and 1976, was fraudulent with intent to evade tax. 53. Morris Mizrahi's and Sam Mizrahi's instructions to employees of Wigginess and Spartacus to lie to respondent's agents in connection with the examination of the corporations' income tax returns for the years at issue were fraudulent with intent to evade tax. 54. Wigginess, Inc., fraudulently, and with intent to evade tax, omitted from its income tax returns for the F.Y.E. July 31, 1974, 1975 and 1976, the income from cash receipts and kickbacks in the amounts of $ 255,830.72, $ 227,033.66 and $ 236,899.21, respectively. 55. All or part of each deficiency in income tax due from Wigginess, Inc., *238 for F.Y.E. July 31, 1974, 1975 and 1976, is due to fraud with intent to evade taxes. 56. Spartacus Spa, Inc., fraudulently, and with intent to evade tax, omitted from its income tax returns for the F.Y.E. May 31, 1974 and 1975, the income from cash receipts and kickbacks in the amounts of $ 136,888.58 and $ 225,196.85, respectively. 57. All or part of each deficiency in income tax due from Spartacus Spa, Inc., for F.Y.E. May 31, 1974 and 1975, is due to fraud with intent to evade taxes. 58. Morris Mizrahi fraudulently, and with intent to evade tax, omitted from his income tax returns for the taxable years 1973, 1974, 1975 and 1976, the income from constructive dividends and/or other income from Wigginess, Inc., and Spartacus Spa, Inc., in the amounts of $ 91,654.75, $ 215,891.15, $ 171,031.81 and $ 75,024.44, respectively. 59. All or part of each deficiency in income tax due from Morris Mizrahi for taxable years 1973, 1974, 1975 and 1976, is due to fraud with intent to evade taxes. 60. Sam Mizrahi fraudulently, and with intent to evade tax, omitted from his income tax returns for the taxable years 1973, 1974, 1975 and 1976, the income from constructive dividends and/or other *239 income from Wigginess, Inc., and Spartacus Spa, Inc., in the amounts of $ 92,654.88, $ 214,601.16, $ 171, 031.81 and $ 124,544.45, respectively. 61. All or part of each deficiency in income tax due from Sam Mizrahi for taxable years 1973, 1974, 1975 and 1976, is due to fraud with intent to evade taxes. 62. The assets of Wigginess and Spartacus (hereinafter the "transferors") consisted almost entirely of cash. 63. Throughout the years at issue and subsequently the transferors transferred to Morris and Sam Mizrahi a substantial portion of the transferors' cash receipts. 64. Said transfers, as set forth in paragraph 63, above, were made to Sam and Morris Mizrahi without any consideration. 65. By reason of the transfer of cash assets by the transferors to Morris and Sam Mizrahi, the transferors were rendered and are insolvent without assets with which to pay the deficiencies in corporate income tax at issue in this case, plus interest thereon as provided by law due, for their respective taxable years. 66. The value of the cash transferred petitioners by the transferors was in excess of the deficiencies in corporate income tax due from the transferors, plus interest thereon *240 as provided by law. 67. On March 28, 1990, the respondent sent to each petitioner, by certified mail, a notice of liability in which it was determined that there was a deficiency in income tax due from the transferors. 68. No part of the deficiencies in corporate income tax due from the transferors, together with interest thereon as provided by law, has been paid. 69. By reason of the transfer of assets to the petitioners and their receipt by the petitioners, petitioners became, and are, each transferees of assets within the meaning of section 6901 and, as such, liable for the deficiencies in income tax due from the transferors for the respective taxable years at issue, plus interest thereon as provided by law.
Petitioners failed to serve respondent or file with this Court a reply to this request for admissions. By failing to respond to this request for admissions within the 30 days prescribed by Rule 90(c), petitioners are deemed to have admitted the facts contained therein. Rule 90(c); Marshall v. Commissioner, 85 T.C. 267, 272 (1985); Freedson v. Commissioner, 65 T.C. 333, 335-336 (1975), affd. 565 F.2d 954 (5th Cir. 1978). *241 On September 17, 1991, respondent filed a motion for summary judgment. In support of this motion for summary judgment, respondent offers the undenied admissions deemed admitted. Respondent's motion for summary judgment was calendared for hearing at the trial session commencing on November 12, 1991, in New York, New York, and we ordered petitioners to file with this Court a written response to respondent's motion on or before October 18, 1991. Petitioners neither filed a response nor appeared when the case was called for trial on November 13, 1991. For the reasons set forth below, we will grant respondent's motion for summary judgment. Rule 121(b) provides that summary judgment shall be entered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The burden of proving that there is no genuine issue for trial is on the moving party, and all factual materials and inferences are viewed in a light most favorable to the party opposing summary judgment. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). *242 However, where the moving party has supported his motion for summary judgment, the party opposing summary judgment must set forth specific facts showing that there is a genuine factual issue for trial. Id.
Failure to Report Income
Respondent's determination that petitioners failed to report income on their Federal income tax returns for the taxable years at issue is presumptively correct, and petitioners bear the burden of overcoming this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners have provided no evidence to support their contention that respondent erred in determining that they failed to report income on their Federal income tax returns. Inasmuch as we find that petitioners' omission of income on their Federal income tax returns was fraudulent, infra pp. 15-17, petitioners erred in alleging that the statute of limitations for the assessment and collection of Federal income tax had expired prior to respondent's mailing of the statutory notices of deficiency. [3] Sec. 6501(c). Moreover, petitioners are deemed to have admitted that they failed to report, as income, substantial amounts of cash that the Mizrahi *243 brothers skimmed from the gross receipts of Wigginess and Spartacus Spa. See Respondent's Request for Admissions, pars. 7-42, supra pp. 5-10. Petitioners also are deemed to have admitted that the Federal income tax returns of Wigginess and Spartacus Spa do not reflect cash payments received from the hostesses of the respective corporations. See Respondent's Request for Admissions, pars. 15-17, supra pp. 6-7. Thus, it is clear that petitioners have failed to meet their burden, and that a decision for respondent should be rendered as a matter of law with respect to the deficiency determinations in the instant case. *244 Fraud Additions
Respondent has the burden of proving petitioners' liability for additions to tax for fraud. Sec 7454(a); Rule 142(b). To meet this burden, respondent must show, by clear and convincing evidence, an underpayment in petitioners' Federal income tax, and that some portion of this underpayment was attributable to fraud. Sec. 7454(a); Rule 142(b); Marhsall v. Commissioner, supra at 272; Doncaster v. Commissioner, 77 T.C. 334, 337-338 (1981). To meet this burden, respondent is entitled to rely on facts deemed admitted. Marshall v. Commissioner, supra at 272; Doncaster v. Commissioner, supra at 337. Petitioners are deemed to have admitted facts sufficient to establish their underpayment of Federal income tax for the taxable years at issue. See Respondent's Request for Admissions, pars. 7-42, supra pp. 5-10. Moreover, petitioners are deemed to have admitted that the Mizrahi brothers' filed false Federal income tax returns, omitting specific items of income, for the taxable years at issue with the intent to evade Federal income tax. See Respondent's Request for Admissions, pars. *245 32, 38, 43, supra pp. 9-10. Similarly, petitioners are deemed to have admitted that, for the taxable years at issue, Wigginess and Spartacus Spa omitted income from their Federal income tax returns with the intent to evade taxes. See Respondent's Request for Admissions, pars. 54, 56, supra p. 11. We find the facts deemed admitted sufficient to prove by clear and convincing evidence that the Mizrahi brothers, Wigginess, and Spartacus Spa are liable for additions to tax for fraud. Accordingly, no genuine issue of material fact exists as to this issue, and respondent is entitled to a decision as a matter of law. Transferee of Assets
A transferee, to the extent of assets received, is retroactively liable for the transferor's Federal income tax and resulting additions to tax and interest in the year of transfer and prior years. Swinks v. Commissioner, 51 T.C. 13, 17 (1968); Kreps v. Commissioner, 42 T.C. 660, 670 (1964), affd. 351 F.2d 1 (2d Cir. 1965). Respondent has the burden of proving that the Mizrahi brothers are transferees of assets of Wigginess and Spartacus Spa. Sec. 6902(a); Rule 142(d). Transferee *246 liability is determined by a preponderance of the evidence, C.B.C. Super Markets, Inc. v. Commissioner, 54 T.C. 882, 898 (1970), and respondent is entitled to satisfy this burden by relying on facts deemed admitted. Cf. Marshall v. Commissioner, supra at 272; Doncaster v. Commissioner, supra at 337. The substantive elements of whether a transferee is liable for the obligations of the transferor are determined under applicable State law. Commissioner v. Stern, 357 U.S. 39 (1958); Ginsberg v. Commissioner, 305 F.2d 664, 667 (2d Cir. 1962), affg. 35 T.C. 1148 (1961). In petitioners' case, the New York State Debtor and Creditor Law provides that transferee liability exists where the transferor is rendered insolvent by a series of distributions of assets, and the transferee takes the assets without providing full and fair consideration. N.Y. Debtor and Creditor Law secs. 273, 278 (West 1990); Gruenebaum v. Lissauer, 57 N.Y.S. 2d 137, 145 (Sup. Ct. 1945), affd. 61 N.Y.S. 2d 372 (App. Div. 1946); see also O.B.M., Inc. v. Commissioner, 52 T.C. 619, 630-631 (1969), *247 revd. on other grounds 427 F.2d 661 (1970). As previously stated, petitioners are deemed to have admitted that they skimmed substantial amounts of cash from both Wigginess and Spartacus Spa. See Respondent's Request for Admissions, pars. 7, 30, supra pp. 5-6, 8. Petitioners also are deemed to have admitted that these transfers were without consideration, that both Wigginess and Spartacus Spa were rendered insolvent because of these transfers, and that these transfers were in excess of the deficiencies in Federal income tax and additions to tax determined by respondent against Wigginess and Spartacus Spa. See Respondent's Request for Admissions, pars. 64-66, supra p. 12. On this record, we find that respondent has met her burden of proving transferee liability and that there is no genuine issue of material fact. We therefore hold that respondent is entitled to a decision on this issue as a matter of law. To reflect the foregoing, An appropriate order and decision will be entered for respondent. Footnotes
1. Respondent limited liability for additions to tax to Morris Mizrahi.↩
1. Respondent limited liability for additions to tax to Sam Mizrahi.↩
1. All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent denies for lack of knowledge that Wigginess and Spartacus Spa were "defunct" New York corporations. Whether Wigginess and Spartacus Spa, as "defunct" New York corporations, have the requisite capacity, under Rule 60, to engage in litigation before this Court is immaterial because our jurisdiction also extends to "a case commenced in the Court by a transferee or fiduciary, upon the issuance by the Commissioner of a notice of liability to the transferee or fiduciary." Rule 13(a).↩
3. Frances and Clarissa Mizrahi are liable for the deficiencies in Federal income tax because they filed joint returns with Morris and Sam Mizrahi, respectively. Although respondent's proof of fraud is limited to Morris and Sam Mizrahi, such proof prevents the running of the statutory period of limitations; Frances and Clarissa Mizrahi therefore remain liable for deficiencies in Federal income tax for the taxable years at issue. Stone v. Commissioner, 56 T.C. 213↩ (1971).